Robert DRIVER, Monica Driver, Larry Dunn and Karen Dunn, Respondents,

v.

Henry C. GERMANN and Margie D. Germann, Appellants.

No. WD 32823.

Missouri Court of Appeals, Western District.

Aug. 3, 1982.

Jack Peace, Trenton, for appellants; Stockard, Andereck, Hauck, Sharp & Evans, Trenton, of counsel.

Syd Weybrew, Gallatin, for respondents.

Before SHANGLER, P. J., and PRITCHARD and DIXON, JJ.

PRITCHARD, Judge.

This is an action for damages to a field of soybeans caused by appellants' cattle escaping from their land through a division fence, stipulated to have been lawfully erected. § 272.210, RSMo 1978.

On trial de novo to the court, judgment was rendered against appellants for $1,035.25, 9% interest thereon, and for costs.

On August 14, 1980, Larry Dunn had 20 acres of soybeans growing on the Drivers' land which was west of the division fence. There was a strip of brush and trees on the west, and to the east was the Germanns' grazing pasture. There was no evidence of any agreement between the parties as to what part was to be repaired by either, or of any viewers designating the portion to be kept in repair by each under § 272.280, RSMo 1978. Germann testified that he had the fence built and the Drivers paid for one-half of it, so it appears that each owned an undivided half of it under § 272.240.

On August 13th, Germann checked his cattle a little before noon seeing 14 cows, 11 calves, and a bull at the north end of his property next to the Drivers' property. The fence was then in perfect shape, with no tree limbs upon it. That night a storm came up, the wind was violent and it was raining. In contrast, Larry Dunn testified that he checked his crops with a friend the night of the 13th and they ran across a bunch of cattle in the beans at the end of the field with a lot of damage done due to their eating and tramping. On examination of the fence, he found: "The fence had been broken by a tree, and it looked like the tree had been there for a few days, and there was a really heavy path going back and forth from the Germann farm to the Driver farm." There was a dead elm on the west side of the fence 12 feet away, and the tree limb looked like it had come from a tree on the west (Driver's side) of the fence. Dunn returned the next day about noon and the cattle were still in his field, and Germann (using a horse) drove the cattle back through the hole in the fence.

Hugh Richey testified he saw the dead tree about 10 to 15 feet from the fence, and the log, about 8 to 10 inches in diameter and 8 to 10 feet long, lying on the wires of the fence, causing it to be down.

Germann further testified that his professional fence builder put the posts of the fence 12 feet apart, and there were four double-brace barbed wires which were as tight as a fiddle. He went on his horse into the Driver land and saw his cattle there. As they moved away, he lost sight of them

but shortly discovered that they had returned to his pasture through the hole in the fence which he then saw. There was a big limb a little better than 12 inches in diameter, heavier than he could lift, on the fence. He sent his wife to get a fence stretcher, staples, pinchers, clips and a hammer while he stayed there with his horse, and later patched, stretched and made it tight. The largest dead tree to the west (on Driver's side) was the one where its top fell off, broke three barbed wires and smashed the bottom one to the ground.

Section 272.030, RSMo 1978, provides: "If any horses, cattle or other stock shall *break over or through* any lawful fence, as defined in section 272.020 [see § 272.210, applicable to Daviess County which has adopted local option, for definition of a lawful fence thereunder], and by so doing obtain access to, or do trespass upon, the premises of another, the owner of such animal shall, for the first trespass, make reparation to the party injured for the true value of the damages sustained, * * *." [Italics and brackets added.] In the trial court, the Drivers contended that this statute imposed strict liability derived merely from the fact that the Germanns' cattle escaped onto their lands and the soybean field.

The facts show that the Germanns' cattle did not break over or through the lawful fence. Rather, the damage to the fence and the escape of the cattle came from an entirely independent cause—the falling of the tree limb upon the fence breaking the wires and crushing them to the ground, thus creating an opening through which the cattle could pass. Clearly, the tree limb came from a dead tree upon the Drivers' property and the Germanns would be under no duty to go upon the Drivers' land and remove any danger to the fence which might be caused by the tree. The facts distinguish *Morris v. Gutshall*, 206 S.W. 385 (Mo.App.1918), where hogs, having a natural propensity to root, got under a divisional fence and into plaintiff's corn. The court noted it was a jury question whether anything was wrong with the fence and held that defendants were liable under the circumstances as it was their duty to see that the hogs did not trespass upon the lands of another.

The judgment is reversed.

All concur.