**STATE of Missouri, Respondent,**

v.

**William WAYMAN, Appellant.**

**No. WD 51168.**

Missouri Court of Appeals,
Western District.

July 23, 1996.

Jeannie Arterburn, Asst. Public Defender, Kansas City, for appellant.

Jessica Shulman, Asst. Pros. Atty., Jackson County, Claire McCaskill, Pros. Atty., Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., and ULRICH and SMART, JJ.

ULRICH, Judge.

William Wayman appeals his conviction, after jury trial, of one count of furnishing pornographic materials to a minor in violation of section 573.040, RSMo 1994. He was acquitted of stalking, section 565.225, RSMo 1994. He alleges the trial court erred in permitting the state to introduce, over objection, the testimony of Julie Jones [1] that she received a phone call from her son's high school informing her that a school employee had received a telephone call, from an unknown caller, stating her son would be assaulted because he was a homosexual. Mr. Wayman claims this testimony was inadmissible hearsay. Mr. Wayman also alleges the trial court erred in admitting into evidence: 1) a class reunion book, 2) testimony by various witnesses that they did not keep nude photographs of themselves in their homes, and 3) evidence of fear or distress suffered by Mr. and Mrs. Jones.

The judgment of conviction is affirmed.

William Wayman was charged with one count of furnishing pornographic materials to a minor, section 573.040, RSMo 1994, and one count of stalking, section 565.225, RSMo 1994. Count I alleged that on September 30, 1994, Mr. Wayman mailed pornographic photographs of himself to Jerry Jones, a minor. Count II, of which Mr. Wayman was acquitted, alleged that between September 29, 1994, and October 20, 1994, Mr. Wayman purposely harassed Jerry Jones by distributing letters and items of personal property to Jerry and his family and friends.

Mr. Wayman lived next door to one of Jerry's friends. Jerry was introduced to Mr. Wayman in the summer of 1994, when he was 16 years of age. He and his friend had gone next door to borrow a saw to complete a project on which they were working. Mr. Wayman allowed them to use his table saw located in his garage. That same day he purchased alcohol for the boys at a local convenience store. After this day, Jerry and his friend, visited Mr. Wayman several more times. During these visits, Mr. Wayman provided beer to the boys and allowed the two minors to smoke marijuana in his room. Mr. Wayman would discuss relationships, his criminal history and his time in prison. He also allowed Jerry to play his guitar on a few occasions.

Mr. Wayman began approaching Jerry at the supermarket at which Jerry worked. One day in September, Mr. Wayman left a guitar at the supermarket for Jerry. After work Jerry returned the guitar to Mr. Wayman expressing that he did not want the

1. The first and last names of the victim and his family have been changed in this opinion.

guitar nor did he want Mr. Wayman to bother him anymore. Later in the month Jerry returned home from school and found the guitar on his doorstep.

The day after Jerry returned the guitar, Mr. Wayman left a package at the high school with instructions for it to be given to Mrs. Jones, Jerry's mother. The package contained a class reunion book. Mr. Wayman and Mrs. Jones had attended high school together. The class reunion book contained descriptions of what each individual had done since graduation. Mr. Wayman had previously told Jerry he would provide the reunion book for Mrs. Jones since she had not received one at the reunion. Mrs. Jones did not remember Mr. Wayman from school and read the excerpt he had included in the book. The excerpt's principal focus was on Mr. Wayman's life of crime.

On September 30, 1994, Mr. Jones, Jerry's father, noticed a package addressed to Jerry in the mail. Mr. Jones had recently discovered that Jerry had smoked marijuana, and he was concerned about what the package may have contained. Mr. Jones opened the package in Jerry's presence. It contained seven photographs and a letter to Jerry. Several of the photographs contained explicit pornographic shots, including one of Mr. Wayman masturbating. Jerry became hysterical. The Joneses immediately notified the police.

In the next few days a letter was left at the technical school that Jerry attended, and a brown paper bag was left at the Jones residence containing young boys clothing and a Bozo the clown doll. Additionally, several family friends received letters from Mr. Wayman alleging, without foundation, that Jerry was homosexual. Mrs. Jones received a letter discussing Jerry and his alleged relationships. Mrs. Jones then received a telephone call from Jerry's high school informing her that someone had called the school and stated that Jerry may be the victim of an assault due to his alleged homosexuality. The police were immediately notified and met the Joneses at Jerry's school. The police went to Mr. Wayman's residence and received consent to search the basement where he lived. Duplicates of the porno-

graphic photographs sent to the Jones residence were found during the search.

Prior to trial, Mr. Wayman made a motion in limine to prevent introduction of evidence regarding the phone call received by Jerry's high school. He contended that the evidence was irrelevant and constituted hearsay because it would be admitted through Mrs. Jones' testimony. He also moved to preclude the state from introducing as evidence the contents of the class reunion book, stating the entry in the book of his post-graduation activity was highly prejudicial and of little probative value. The court deferred ruling on the motions but stated that if delivery of the book to the Joneses was within the time frame of the stalking charge it would most likely be allowed into evidence. Ultimately, both pieces of evidence were admitted.

The jury returned its verdict of guilty on Count I, furnishing pornographic materials to minors and a verdict of not guilty on Count II, stalking. The jury recommended one year imprisonment in the county jail. The trial court overruled Mr. Wayman's motion for new trial and sentenced him to one year in the Jackson county jail.

## I. Hearsay Evidence

Mr. Wayman's first point on appeal claims that the trial court erred in permitting the state to introduce, through the testimony of Mrs. Jones, that the high school Jerry attended received a phone call in which the caller stated Jerry would be assaulted because he was a homosexual. Mr. Wayman asserts that this was inadmissible hearsay evidence because the state failed to call the employee of the high school who received the telephone call, and he claims to have been prejudiced by its admission.

■ Testimony of a witness regarding the out-of-court statement of another is hearsay only when the statement is offered to prove the truth of the matter asserted therein. *Matter of Estate of Glover*, 854 S.W.2d 850, 853 (Mo.App.1993). If the significance of the offered statement lies solely in the fact that it is made, no issue is raised as to its truth, and the offered statement is not hear-

say. *Mattes v. Black & Veatch,* 828 S.W.2d 903, 907 (Mo.App.1992). Furthermore, a statement offered to provide an explanation for the victim's subsequent actions is not hearsay and, therefore, is admissible. *State v. Thornhill,* 770 S.W.2d 701, 703 (Mo.App. 1989).

Mrs. Jones testified, over objection, that the assistant principal at Jerry's school called her at work to inform her that the school had received a phone call that Jerry was homosexual and that some children from another community were going to beat him up that day. The state asserts that the purpose of this testimony was to show the effect the phone call had on the Joneses, including Jerry, and to explain their subsequent actions. The state also claims that the phone call related to letters received from Mr. Wayman soon thereafter making similar statements.

The state asserts that Mrs. Jones' testimony regarding the telephone call she received from the assistant principal was not introduced to prove the truth of the matter asserted—that Jerry was homosexual and in danger. Instead, the state claims the testimony was offered to explain the resultant emotional distress experienced by the Jerry Jones and the Jones family and the subsequent action taken. If the state is correct, the testimony is not hearsay.

■ Regardless of whether the testimony was hearsay, it was inadmissible because it was not relevant to the issues in the case. The testimony was irrelevant to Count I and could only have been offered in an attempt to prove the elements of Count II. A person commits the crime of stalking when he "purposely and repeatedly harasses or follows with the intent of harassing another person." § 565.225.2, RSMo 1994. "Harasses" is defined in section 565.225.1(3) as "to engage in a course of conduct directed at a specific person that serves no legitimate purpose, that would cause a reasonable person to suffer substantial emotional distress, and that actually causes substantial emotional distress to that person." § 565.225.1(3), RSMo 1994.

Absolutely no evidence was introduced by the state that Mr. Wayman made the phone call to the school. Without connecting Mr. Wayman to the call, evidence of any emotional distress suffered by Jerry Jones or the subsequent action taken by the Joneses as a result of the phone call was irrelevant to the stalking charge against Mr. Wayman. To hold otherwise would allow introduction of any emotional distress suffered by Jerry Jones or a member of the Jones family regardless of whether the distress was caused by Mr. Wayman. The trial court, therefore, erred in admitting the testimony of Mrs. Jones concerning the telephone call from the assistant principle.

■ The admission of the evidence, however, did not result in reversible error. Only prejudicial error is reversible error. *Cummins v. State,* 912 S.W.2d 523, 524 (Mo. App.1995). The testimony regarding the phone call was offered by the state with respect to the stalking charge against Mr. Wayman. Mr. Wayman was acquitted on this count and not prejudiced by the challenged testimony. *See State v. O'Neill,* 825 S.W.2d 376 (Mo.App.1992); *State v. Curry,* 701 S.W.2d 450 (Mo.App.1986).

■ Appellant argues the introduction of the improper evidence caused the jury to recommend a longer sentence than it otherwise would have. The evidence of Mr. Wayman's guilt on count I was overwhelming. The jury knew, apart from the alleged telephone call, that Mr. Wayman had engaged in a series of incriminating acts directed toward Jerry Jones. The jury also knew that Mr. Wayman expressed pride in his asserted previous criminal activities. Substantial evidence was presented for the jury to believe that Mr. Wayman constituted a genuine threat to children and that the maximum sentence was appropriate. The evidence of the telephone call did not affect the sentence. Point one is denied.

## II. Admission of Evidence

Mr. Wayman's second point on appeal claims the trial court abused its discretion in allowing the admission of the following items into evidence: 1) the entry from the class reunion book which asserted Mr. Wayman had engaged in criminal activities; 2) testimony from witnesses that they did not keep nude photograph of themselves in their

homes; and 3) evidence of fear or distress suffered by Mr. and Mrs. Jones as a result of Mr. Wayman's actions. He argues this evidence was not relevant to the issues in the case.

■ Evidence is relevant if it tends to prove a fact or issue or corroborate other relevant evidence which bears on a principal issue in the case. *State v. Shurn*, 866 S.W.2d 447, 457 (Mo. banc 1993). It is for the trial court to decide whether evidence is relevant and whether its probative value outweighs the prejudicial effect. This decision will not be disturbed on appeal unless it is a clear abuse of discretion. *State v. Franklin*, 854 S.W.2d 55, 58 (Mo.App.1993).

## A. The Class Reunion Book

■ The first item that Mr. Wayman claims was erroneously admitted is the class reunion book that he sent to Mrs. Jones. It included an excerpt submitted by Mr. Wayman before the book's publication for inclusion in the book. This excerpt referenced his alleged life of crime after graduation that led to a nine year incarceration in a maximum security prison. Over objection, the book was admitted into evidence, and the excerpt was read to the jury.

The class reunion book was relevant in establishing the state of the mind of the victim. Having been given the book by Mr. Wayman, the Joneses, including Jerry, were aware of his claim of past criminal behavior. This heightened their anxiety and distress upon receiving the letters, phone calls, pictures and other items that Mr. Wayman sent. This was key to establishing the severe emotional distress experienced by Jerry Jones which the state had to prove as an element of the stalking charge. The admission, therefore, was not clearly erroneous.

## B. Testimony Regarding Photographs

■ Mr. Wayman next asserts that the trial court erred in allowing the state to ask Mr. Jones, Jerry Jones, and Detective Black, whether they kept nude pictures of themselves in their respective homes. Each witness responded that he did not. Mr. Wayman claims this evidence was irrelevant and

prejudicial in that it tended to show that his keeping of such photographs is abnormal behavior. The questions posed by the state were in response to a statement made by Mr. Wayman that he thought keeping photographs of this nature was typical.

■ Evidence is logically relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or if it tends to corroborate evidence which itself is relevant and bears on the principal issue of the case. *See State v. Link*, 916 S.W.2d 385, 386–87. Logically relevant evidence is legally relevant if its probative value is not outweighed by its prejudicial effect. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). Balancing the effect and value of evidence is within the trial court's sound discretion. *Id.* Error regarding the admission of evidence will result in reversal only if it results in substantial and glaring injustice. *St. Louis County v. Boatmen's Trust Company, et al.*, 857 S.W.2d 453, 457 (Mo.App.1993). The prejudicial effect of the evidence did not outweigh its probative value, and substantial and glaring injustice did not result.

## C. Fear and Distress of Mr. and Mrs. Jones

■ For his last contention, Mr. Wayman claims the trial court erred in allowing evidence of the fear and distress suffered by Mr. and Mrs. Jones as a result of Mr. Wayman's actions because this evidence was irrelevant.

Mrs. Jones testified that she was upset and "scared to death" when she received the sack of boys clothes with the Bozo doll. Mr. Jones testified that he was "real mad" after receipt of the pornographic photographs. Mr. Wayman asserts that this testimony of Mr. and Mrs. Jones is irrelevant because neither Mr. nor Mrs. Jones was the alleged victim in the case.

The evidence was offered in support of the stalking charge. Whether the testimony was relevant to the stalking charge need not be addressed because Mr. Wayman was acquitted of the charge. Additionally, although the

jury assessed the maximum penalty for Mr. Wayman's conviction for violating section 573.040, the trial judge has authority to reduce the sentence. § 557.036, RSMo 1994. Information available to a sentencing judge is considerably more inclusive than is evidence offered to prove the guilt of the accused. The testimony objected to by Mr. Wayman was information appropriately available to a sentencing judge. Mr. Wayman's sentencing was not prejudiced by the disputed testimony. Point two is denied.

The judgment of conviction is affirmed.

All concur.