**STATE of Missouri, Respondent,**

v.

**Robert A. KUHLENBERG, Appellant.**

No. 73305.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 6, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 1998.

Application for Transfer Denied
Jan. 19, 1999.

Arthur G. Muegler, Jr., St. Louis, for appellant.

John Munson Morris III, Atty. Gen., Catherine Chatman, Asst. Atty. Gen., St. Louis, for respondent.

Before HOFF, P.J., and GARY M. GAERTNER, and RHODES RUSSELL, JJ.

PER CURIAM.

Appellant, Robert A. Kuhlenberg ("defendant"), appeals the judgment of conviction entered by the Circuit of Shelby County after a jury found him guilty of two counts of forcible rape, RSMo section 566.030 (1994),[1] and the court sentenced him to two consecutive terms of ten years in the custody of the Missouri Department of Corrections. We affirm in part and remand in part.

On September 24, 1995, defendant and Kari Poncia ("victim"), were at a friend's house in Cuba, Missouri. The friend had recently introduced victim to defendant and victim thought defendant was a "nice guy" and she could trust him.

Around eight o'clock that evening, defendant and victim left in defendant's car. Defendant instructed victim to drive, because he did not have a license. Defendant told victim to say the car belonged to John Hall if they were pulled over. Victim saw defendant put a nine-millimeter handgun in the car.

Defendant told victim to drive to his sister's house in Washington, Missouri. Find-

ing no one at home, defendant directed victim to a gravel road in Shelby County, and into the driveway of a house. Defendant went into the house, then came out and told victim to come in. Victim asked whose house it was and why they were there. Defendant told victim, "I killed the people who lived here." Then he laughed and told victim the house belonged to his parents.

Victim sat down as defendant moved around the house. Defendant then called victim into another room. Once in the room, defendant grabbed victim and threw her on a bed. Defendant tried to kiss victim but she pushed him away and told him "no." Defendant unzipped his pants, grabbed victim behind her head and pushed her head towards his crotch. Victim resisted so defendant then pushed her back and pulled her jeans and underwear off. Victim continued to struggle with defendant. Defendant then pulled victim's shirt up around her neck and began to twist it. Victim asked defendant how he would feel if someone did this to one of his daughters. Defendant hit her, told her to "shut up" and became more aggressive, striking victim in the face. Defendant was on top of victim and used his legs to push her legs open. Defendant then raped victim.

Afterward, defendant told victim not to move. He asked her if he needed to tie her up "like the rest of them." Victim said no. Defendant then laid on the bed with his arm on victim. Whenever victim attempted to move, defendant would tighten his grip. Eventually, victim was forced to urinate in the bed because she was afraid defendant would hurt her if she tried to move.

In the morning, defendant rolled victim over on her stomach and raped her again. Defendant then left the room. Victim got dressed and went into the living room of the house. Defendant came out of the bathroom and told victim he was getting sick from not having any drugs.

Victim told defendant she needed to call her mother because her mother knew she was with defendant and would be worried and would perhaps call the police. Defen-

1. All statutory references are to RSMo (1994) unless otherwise noted.

dant agreed to leave to find a phone. While looking for a phone, defendant stopped at a cemetery and asked victim if she was afraid to die. Victim told defendant she was not scared to die, but was not ready to die. Defendant said he was scared of death but mentioned blood gave him a rush. During this discussion defendant had pulled out the nine-millimeter gun and was playing with it. Defendant and victim then returned to the car and proceeded to drive to a store. In route, defendant became agitated and started shooting at road signs.

Defendant and victim went into the store and defendant bought some chili. Located one block from the store was a pay phone. Defendant allowed victim to make some calls. Victim attempted to reach her mother and a friend with no success. Victim then made a collect call to her sister in Arkansas. Victim told her sister to tell their mother she was with defendant and to meet them at midnight at a friend's house in St. Louis. Victim indicated to her sister she did not know where she was and defendant was standing right next to her. Then victim relayed to her sister, through "yes" and "no" answers, that defendant had beaten and raped her.

After the phone call, defendant ordered victim to drive back to the house. Once there, defendant ordered victim to heat up the chili, clean up the dishes and make the bed. Shortly thereafter, they left the house and defendant ordered victim to drive to his friend's house in Alton, Illinois. They ate dinner there and afterward left for St. Louis. Victim later testified she was frightened and did not think it would do her any good to ask defendant's friends for help.

Meanwhile, victim's sister had called their mother. Mother called one of defendant's friends to find out where he might have taken victim. The friend suggested defendant's parents' house in Shelby County. Mother then notified the Shelby County Sheriff's Department.

In route to St. Louis, defendant threatened to hurt victim and her family if she told her mother what happened. When they arrived in St. Louis, defendant dropped victim off at a friend's house where her mother was waiting. Mother urged victim to go to the hospital immediately, but victim wanted to go to her family doctor. Mother and victim then went to mother's boyfriend's house where victim took a long, hot bath.

The next morning, victim went to Phelps County Hospital in Rolla. Victim had bruises and scratches on her face, neck, jaw, and arm. Semen was not detected on the vaginal smear taken by the hospital, but was found on her clothes. Victim spoke with the Rolla police at the hospital and later gave a formal statement to the Shelby County Deputy Sheriff.

The Shelby County Sheriff's Department recovered the bedding from defendant's parents' house. The bedding was urine stained.

On January 26, 1996, defendant was charged by Information of one count of attempt to commit forcible sodomy, RSMo section 566.060, and two counts of forcible rape, RSMo section 566.030. At trial, victim testified extensively. Defendant's witnesses included his friends from Alton, Illinois, who testified they saw no marks on victim's face and thought victim was defendant's girlfriend. At the close of the state's case-in-chief, and at the close of all evidence, defendant made a motion for judgment of acquittal which was denied by the court. On August 22, 1997, a jury found him guilty of two counts of forcible rape and not guilty of the one count of attempt to commit forcible sodomy. Subsequently, defendant filed an amended renewed motion for judgment of acquittal, or alternatively, a motion for new trial on the two counts of forcible rape. Both motions were denied.

At sentencing of defendant, counsel for both parties and the court had a lengthy debate as to whether the court, under RSMo section 558.026 (Supp.1995), had the discretion to run the sentences for multiple convictions of sex crimes concurrently or was statutorily mandated to run them consecutively. The parties were unsure. The court subsequently sentenced defendant to two consecutive terms of ten years in the custody of the Missouri Department of Corrections.

Defendant filed a timely notice of appeal. This appeal follows.

Defendant's first of four points on appeal alleges the trial court erred in denying defendant's motions for judgment of acquittal and new trial. In this point, defendant alleges the state failed to make a prima facie forcible rape case, wherein the state based its case solely on the victim's uncorroborated testimony and victim's testimony was contradictory to the physical evidence presented.

 In assessing a challenge to the sufficiency of the evidence, the evidence, along with all reasonable inferences to be drawn therefrom, is viewed in the light most favorable to the verdict, and evidence and inferences contrary to the verdict are disregarded. *State v. Grim*, 854 S.W.2d 403, 405 (Mo.banc 1993). Our review is limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.* Further, "[i]t is within the jury's province to believe all, some, or none of any witness's testimony in arriving at its verdict.... The testimony of one witness may be sufficient to sustain a conviction even if the testimony is inconsistent." *State v. Nelson*, 818 S.W.2d 285, 288 (Mo.App. E.D. 1991) (citations omitted). In the particular context of sexual offense cases, the general rule is "the victim's testimony alone will sustain a conviction even if uncorroborated." *State v. Graham*, 906 S.W.2d 771, 778 (Mo.App.W.D.1995). There is an exception to the general rule called the "corroboration rule." *Id.* This rule applies when the victim's trial testimony is so contradictory and in conflict with the physical facts, surrounding circumstances and common experience, that its validity is rendered doubtful such that corroboration of the victim's testimony is required to sustain the conviction. *Id.* However, the corroboration rule is triggered only by contradictions in the victim's trial testimony. *State v. Davis*, 903 S.W.2d 930, 934 (Mo.App. W.D. 1995). It is not triggered by inconsistencies between the victim's testimony and the testimony of other witnesses. *Id.* Further, the rule is not applied "merely because the testimony of the victim falls into inconsistencies or contradictions as to minor points of a nonessential nature." *State v. Gardner*, 849 S.W.2d 602, 604 (Mo.App. S.D.1993).

 In support of his first point, defendant argues: (a) victim's testimony about the route they drove to Shelby, Missouri; (b) the sequence of the assault; (c) whether the choking of victim was with defendant's hands or victim's shirt; (d) the number of times defendant ejaculated; (e) and, whether victim carried her clothes in a bag or wore them when she delivered them to the police, are all contradictory to victim's earlier statements.

All of these contradictions defendant points to were between victim's out-of-court voluntary statements made right after the rape, which was two years prior to trial and her trial testimony. Further, all of defendant's points of contradiction in victim's testimony are minor points of a nonessential nature. Not one of defendant's points negates the essential elements of the crime at issue. These inconsistencies do not trigger the corroboration rule.

The defendant's other arguments in support of this point attempt to illustrate the lack of corroboration between victim's testimony and the physical evidence and other witnesses' statements. As noted above, the corroboration rule is only triggered by inconsistencies in the victim's trial testimony.

 Based on the foregoing, the victim's testimony alone can sustain the conviction and there was sufficient evidence from such that a reasonable juror could have found defendant guilty beyond a reasonable doubt of forcible rape. Point one is denied.

 In defendant's second point on appeal, he alleges the trial court erred in ordering defendant's sentences to be served consecutively based solely on RSMo section 558.026. Defendant argues the trial court was misdirected in believing consecutive sentences were mandatory under 558.026 and Rule 29.09 [2] applies to this situation such that defendant's sentences must be run concurrently. We agree with defendant's former argument, but not the latter.

 Based on case law interpreting RSMo section 558.026, a "trial court [has] the

2. Rule references are to the Missouri Supreme Court Rules of Criminal Procedure (1998).

discretion to run the sentences for multiple convictions of sex crimes concurrent to each other." *State v. Newman,* 839 S.W.2d 314, 317 (Mo.App. E.D.1992). Where a court is under the misconception that it must run the sentences consecutively under 558.026, a remand is necessary so the court may exercise its options with full discretion. *Id.* at 318.

■ Under Rule 29.09, if the court fails to mention whether the sentences are to run consecutively or concurrently, the sentences are deemed concurrent. *State v. Johnson,* 864 S.W.2d 449, 451 (Mo.App. W.D.1993). In this case, counsel for both parties and the court, were unsure whether section 558.026 mandated defendant's sentences run consecutively. The court stated, "If the statute mandates it, I have to run them consecutively." The court verbally sentenced defendant to consecutive sentences and the judgment so reflects this fact, therefore, Rule 29.09 does not apply. However, the record is clear the court was unsure of its discretion under RSMo section 558.026 to sentence defendant to either consecutive or concurrent sentences. We, therefore, remand for the trial court to exercise its options as to sentencing, with full knowledge of its discretion.

■ Defendant's third point is one sentence, twenty-one lines long, wherein defendant apparently [3] alleges the trial court erred in entering judgment of conviction on two counts of forcible rape because the verdict directing instruction numbers 9 and 11 were unconstitutionally vague and the verdict directors misstate Missouri substantive law.

■ "A point relied on which cannot be understood without resort to the transcript or argument portion of the brief preserves nothing for appellate review." *State v. Roark,* 877 S.W.2d 678, 679 (Mo.App. S.D. 1994). Further, a point relied on "shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...." *State v. Flemming,* 855 S.W.2d 517, 520 (Mo.App. S.D.1993) (quoting Rule 30.06(d)). "Setting out mere abstract statements of law without showing how they are related to any action or ruling of the court does not comply with Rule 30.06." *City of Belton v. Horton,* 947 S.W.2d 104, 105 (Mo.App. W.D.1997).

Defendant's convoluted point three was interpreted in the respondent State's brief as an attempt at arguing the verdict directors should be found unconstitutionally vague and that they misstate Missouri law. It is not for this court to guess what argument defendant was attempting to set out. Defendant's argument could not be understood in his point without resort to the argument portion of his brief and respondent State's interpretation of such. Therefore, this point relied on preserves nothing for our review. Further, defendant failed to illustrate how any specific sections in the particular verdict directors were vague or misstated Missouri law and did not cite any case law in support of his arguments, other than general principles of constitutional law. Defendant failed to comply with Rule 30.06. Accordingly, defendant has preserved nothing for review and point three is therefore denied.

Defendant's fourth and final point alleges trial court erred by giving verdict directing instruction numbers 9 and 11 because there was no substantial evidence to support their submission. Verdict directing instruction number 9 states:

"As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

> First, that on or about September 24, 1995, in the County of Shelby, State of Missouri, the defendant had sexual intercourse with Kari L. Poncia, and Second, that defendant did so by the use of forcible compulsion,

then you will find the defendant guilty under Count II of forcible rape.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

'Forcible compulsion' means physical force that overcomes reasonable resistance or a

---

**3.** Respondent State does an excellent job of attempting to "boil down" defendant's arguments.

threat, express or implied, that places a person in reasonable fear of death or serious physical injury or kidnaping.

If you do find the defendant guilty under Count II of forcible rape, you will assess and declare one of the following punishments:

1. Life imprisonment.

2. Imprisonment of a term of years fixed by you, but not less than five years."

Verdict directing number 11 is the same except for the date, which represents the date of the rape that occurred the next morning.

■ The decision whether to submit a tendered jury instruction is within the trial court's discretion. *State v. Smith*, 949 S.W.2d 901, 905 (Mo.App. S.D.1997). The instruction should be supported by substantial evidence. *Id.*

Defendant's argument in this section is essentially the same as under point one, a challenge to the sufficiency of the evidence to support his convictions. As illustrated in our discussion of point one, victim's testimony was sufficient evidence to support defendant's forcible rape convictions. Point denied.

Based on the foregoing, the decision of the trial court is affirmed in part and remanded in part.