STATE of Missouri, Respondent,

v.

Kent BAKER, Appellant.

No. ED 76635.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 30, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 6, 2000.

Application for Transfer Denied
Aug. 29, 2000.

Daniel S. Cohen, C. John Pleban, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Jefferson City, for respondent.

CLIFFORD H. AHRENS, Judge.

Kent Baker ("Defendant") appeals a judgment of the Circuit Court of St. Louis County on a conviction finding him guilty of eight counts of statutory sodomy in the second degree, section 566.064 RSMo (1994). Defendant was sentenced to concurrent terms of two years' imprisonment on each count. On appeal, defendant asserts there was insufficient evidence to support his convictions and the jury was improperly instructed. Defendant also argues the trial court erred in admitting testimonial evidence from other police officers concerning collateral and prejudicial matters not relevant to the charges. We affirm.

Viewed in a light most favorable to the verdict, the evidence showed the following. The city of Eureka police department offered an explorer program through the Boy Scouts of America for young adults aged 14 to 20 interested in law enforcement. Explorers participated in various aspects of law enforcement including crime scene investigation, fingerprinting, and community service. Explorers also participated in a ride-along program where they had the opportunity to ride along with a

police officer in a squad car during the officer's shift. Explorers were permitted one ride-along per month; however, they accrued additional ride-alongs for assisting at public and community service events.

J.L. ("Victim") joined the explorers in the fall of 1996. At the time, she was fifteen years old. She was interested in becoming a police officer and spent a great deal of time at the Eureka police department. Victim was very active in the explorer post, earning additional ride-along privileges for her extra work parking cars and filing papers.

In early August 1997, a jail-watch employee overheard victim telling another explorer she had been having oral sex with several police officers. The jail-watch employee reported the conversation to the chief of the Eureka police department ("Chief"), and the chief spoke with the officer in charge of the explorers and ordered him to initiate an investigation. The chief then relayed the jail-watch employee's statements to a lieutenant ("Lieutenant"), and the two determined that the officers as well as victim needed to be interviewed. They concluded defendant should conduct the interviews. The chief held a meeting with defendant and ordered him to begin an investigation. Defendant spoke with victim, who denied the allegations, and defendant reported to the chief that the claims were "bogus" and unsubstantiated.

On October 31, 1997, victim, desiring to participate in a ride-along, approached defendant and inquired if she could ride along with him during his shift that night. Defendant agreed. After responding to a vandalism call and passing out candy to trick-or-treaters, defendant drove victim to a secluded vacation property. Defendant and victim exited the patrol vehicle, and defendant led victim to a covered swimming pool. After pulling the cover back from the surface of the pool, defendant remarked he wished to go skinny dipping and proceeded to remove all his clothing. Victim subsequently removed all of her clothing and entered the water. While defendant sat on the side of the pool and fondled victim's breasts, victim placed her mouth on defendant's penis and performed oral sex. After a few minutes, victim exited the pool, victim and defendant dressed, and the two drove away in the patrol vehicle.

Victim participated in two ride-alongs with defendant during November 1997. On each of these ride-alongs, victim performed oral sex upon defendant, and defendant penetrated victim's vagina with his fingers. Around Christmas in 1997, defendant approached victim while she was working at a local McDonald's, and she agreed to meet defendant at the conclusion of her shift. Defendant drove victim to the vacation property and performed oral sex upon her. Victim testified her relationship with defendant continued into January 1998. The pair drove to the vacation property approximately ten times throughout the course of their relationship, and each time victim would perform oral sex on defendant, and defendant would insert his fingers into her vagina.

Defendant and victim often spoke of having sexual intercourse together. The pair had discussed getting a hotel room when victim turned seventeen. While in the sergeants' office at the Eureka police department, victim informed defendant her birthday was July 15. Defendant began circling the date of July 15 on several calendars throughout the office. During a ride-along sometime after January 16, defendant pulled a condom out of his shirt pocket and showed it to victim. Victim remarked she did not think "[they] were going to do that until [she] turned seventeen." Defendant replied there were other things they could do. Ultimately, defendant and victim never engaged in sexual intercourse.

Around March 1998, victim increased her ride-alongs with Sergeant Sindel ("Sergeant"). Victim was a platonic friend with the sergeant and would confide per-

sonal matters to him. The sergeant asked victim if rumors he had heard of the sexual relationships were true, and victim admitted they were true. The day after this conversation, victim rode along with the sergeant and again admitted to having had sexual relations with defendant and two other police officers. Unbeknownst to victim, the sergeant began tape-recording their conversation. However, when victim discovered the recording device, she began crying and yelling at him. The sergeant explained he needed to "cover [him]self" and told victim that, out of respect for his wife, he would not allow her to ride along with him anymore. The sergeant reported his findings to the lieutenant.

In March 1998, a school resource officer at Eureka high school told the chief she had heard rumors that several Eureka police officers were involved with an explorer. The school resource officer believed the explorer in question was victim. The following month, the lieutenant and the sergeant told the chief they had information that three police officers were sexually involved with victim. After listening to the tape recorded conversations made by the sergeant, the chief contacted the St. Louis County police department to conduct an independent investigation.

Defendant was charged with nine counts of statutory sodomy in the second degree, section 566.064 RSMo (1994), for acts committed between October 31, 1997 and February 28, 1998. The jury returned a verdict of guilty on eight counts and assessed a punishment of two years' imprisonment for each offense. The court entered judgment accordingly and ordered the two-year terms of imprisonment to run concurrently. This appeal follows.

Defendant's first point on appeal contends the trial court erred in failing to grant his motion for judgment of acquittal as there was insufficient evidence with which to convict him. Specifically, defendant complains there was no in-court identification of him as the perpetrator of the offenses charged and the victim's testimony was so contradictory and in conflict with physical facts that it should not have been accepted short of corroboration.

Defendant first notes that throughout the course of the trial, victim never identified defendant as the perpetrator of the charged offenses. As such, she was able to hide behind the allegations of the prosecutor, and whether "Sergeant Kent Baker" referenced in the testimony is actually defendant is a question that will unjustly remain unanswered.

 The evidence at trial must show defendant was the person who committed the crime, but an in-court identification is not always required. *State v. Couch*, 793 S.W.2d 599, 605 (Mo.App.1990). The procedure used at trial to identify the defendant lies within the prudent discretion of the trial court. *State v. Lingar*, 726 S.W.2d 728, 732 (Mo.1987). Each case is to be examined on its own facts looking at the totality of the circumstances. *Couch*, 793 S.W.2d at 605.

 Although victim never physically indicated defendant's presence in the courtroom, there exists sufficient evidence to identify defendant as the accused. Victim testified she never went to the vacation property with "Sergeant Baker" when something sexual would not happen; every time something sexual would happen. In addition, when asked if she could give an estimate of how many times she went to the vacation property with "Kent Baker" where sex acts were performed, she testified, "I'd say approximately ten times." Moreover, the record reflects Kent Baker was present in person throughout the entire proceeding and was the sole defendant on trial. The jury could clearly infer that the "Kent Baker" and "Sergeant Baker" referred to by the witnesses, and the victim in particular, was the defendant present in court. *See Lingar*, 726 S.W.2d at 733. Looking at the evidence in the "totality of the circumstances," we find no ambiguity as to defendant's identity.

In assessing a challenge to the sufficiency of the evidence, the evidence, along with all reasonable inferences to be drawn therefrom, is viewed in the light most favorable to the verdict, and evidence and inferences contrary to the verdict are disregarded. *State v. Kuhlenberg*, 981 S.W.2d 617, 621 (Mo.App.1998). Our review is limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.* It is within the jury's province to believe all, some, or none of any witness's testimony in arriving at its verdict. *Id.* The general rule is the victim's testimony alone will sustain a conviction even if uncorroborated. *Id.*

An exception, called the "corroboration rule," comes into play in the particular context of sexual offense cases. *Id.* Corroboration is mandated only when the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is rendered doubtful such that corroboration of the victim's testimony is required to sustain the conviction. *Id.* The "corroboration rule" is triggered only by contradictions in the victim's *trial* testimony. *Id.* (emphasis added). Further, the rule is not applied merely because the testimony of the victim includes inconsistencies or contradictions as to minor points of a nonessential nature. *Id.* Conflicts of nonessential nature and issues regarding the credibility of witnesses are matters for the jury to determine. *State v. Davis*, 903 S.W.2d 930, 934 (Mo.App. 1995).

Defendant points out numerous "impossibilities" and "contradictions" in victim's testimony, in particular the testimony surrounding the October 31 incident at the swimming pool. Defendant notes victim, who had complained of being cold, proceeded to enter "freezing" cold water prior to performing oral sex on defendant. Defendant remarks victim testified she performed oral sex on defendant who remained sitting on the edge of the pool while she was in the "deep end" of the pool. Defendant questions victim's testimony detailing the ease at which defendant removed the cover from the pool and victim's testimony that she remained in "stagnate dirty water" after performing oral sex upon defendant. Defendant challenges the reliability of the non-sequential October 31, 1997 entry in the explorer ride-along schedule with the names "Baker" and "Jamie L." Defendant argues victim could never have had sexual relations with him on or about January 17, 1997, as she testified she had been involved in an automobile accident on January 16. Finally, defendant points out the prosecution never asked victim to comment upon the truth to defendant's nickname "trigger," namely whether defendant had unusually large genitalia.

The "essential element" of statutory sodomy in the second degree is whether defendant had "deviate sexual intercourse" with victim at a time when defendant was twenty-one years of age or older, and victim was less than seventeen years of age. Section 566.064.1 RSMo (1994). "Deviate sexual intercourse" is defined as "any act involving the genitals of one person and the mouth... of another person or a sexual act involving the penetration, however slight, of the male or female sex organ... by a finger... done for the purpose of arousing or gratifying the sexual desire of any person." Section 566.010(1) RSMo (1994). Victim's trial testimony was unambiguous in detailing the elements of the offense and was not so conflicting with the physical facts and circumstances surrounding the incident as to require corroboration. Any discrepancies or confusion concerning the temperature or depth of the pool water, the difficulty in removing the pool cover, and the log-book entries were collateral matters and bore only upon victim's credibility. Such discrepancies did not relate to an "essential element of the case" and thus were matters for the jury to consider in assessing victim's credibility.

*State v. Gatewood,* 965 S.W.2d 852, 856 (Mo.App.1998). Point denied.

■ Defendant's second point on appeal contends the trial court erred in overruling his motion for judgment of acquittal as there was insufficient evidence to convict him of four of the eight counts of statutory sodomy in the second degree. Defendant argues the state failed to produce sufficient evidence that deviate sexual intercourse occurred four times between January 1, 1998 and February 28, 1998, and the convictions were supported by mere conjecture and speculation.

In order to sustain a conviction, the state must prove beyond a reasonable doubt that the defendant committed each element of the charged offense. *State v. Jackson,* 896 S.W.2d 77, 82 (Mo.App.1995). Our review is limited to determining whether there is sufficient evidence from which a reasonable juror might have found defendant guilty beyond a reasonable doubt. *Kuhlenberg,* 981 S.W.2d at 621.

Counts 6 through 9 of the indictment charged defendant with having had deviate sexual intercourse with victim four times between January 1, 1998, and February 28, 1998. At trial, victim testified she and defendant visited the vacation property approximately ten times, and during each visit, sexual acts were performed. Victim could only remember four instances where they traveled to the property prior to January 1, 1998. Victim testified each time they engaged in sexual activity at the vacation property, she would place her mouth on defendant's penis and defendant would place his finger in her vagina. Victim also testified their "relationship" continued through January 28, 1998, and she was still "involved" with defendant as of January 16, 1998. Finally, victim testified "something sexual" happened during a ride-along "a few days after" January 17, 1998 or January 18, 1998.

Viewing the testimony in the light most favorable to the state, one could reasonably believe defendant and victim traveled to the vacation property twice between January 1, 1998, and February 28, 1998 and engaged in deviate sexual intercourse two times during each visit. The convictions were supported by sufficient evidence in the form of victim's testimony and were not supported by mere speculation or conjecture. *See State v. Sexton,* 929 S.W.2d 909, 916 (Mo.App.1996) ("The testimony of a single witness will suffice to support a criminal conviction"). Based upon this testimony, a reasonable juror could have found defendant guilty beyond a reasonable doubt of four counts of statutory sodomy in the second degree within the two month time frame. Point denied.

Defendant's third point on appeal complains the trial court erred in permitting reserve police officer Michael Werges ("Werges") to testify that defendant had said his nickname was "trigger" because he was "hung like a horse" and that defendant had pulled a condom out of his shirt pocket one evening while on patrol. Defendant argues this testimony was irrelevant, did not corroborate relevant evidence, improperly bolstered an unimpeached witness, was not warranted by the rule of necessity, improperly attacked the character of defendant, related to a bad act unassociated with the charged crime, and was overly prejudicial.

Over defendant's objection, reserve police officer Werges was permitted to testify defendant's nickname outside the police department was "trigger" due to his large genitalia. Victim would later testify defendant had told her his ex-wife had called him "trigger" because he was "hung like a horse." The state argued such evidence was relevant to the development of victim and defendant's relationship and corroborated victim's testimony. Also over defendant's objection, Werges was permitted to testify that in February 1998, while he was on patrol with defendant, defendant pulled out a condom from his shirt pocket and stated he may have to release Werges that evening as he planned on having a ride-along. The state argued Werges's testi-

mony regarding the condom corroborated victim's testimony that defendant pulled a condom out of his shirt pocket during a ride-along. We review questions concerning admissibility of evidence for an abuse of discretion. *State v. Seiter,* 949 S.W.2d 218, 223 (Mo.App.1997).

■ Defendant first argues the nickname "trigger" and the display of a condom from his shirt pocket were irrelevant issues as they had no bearing on whether defendant committed second-degree sodomy. Evidence is relevant if it logically tends to prove or disprove a fact in issue or corroborates evidence which itself is relevant and bears on a principal issue. *State v. Santillan,* 1 S.W.3d 572, 578 (Mo. App.1999).

■ Although defendant did not reveal his nickname to victim until after the relationship had already begun, the trial court may have found the defendant, by revealing the nickname, attempted to create an atmosphere of sex consciousness that enabled him to continue his illegal conduct. As such, disclosing the nickname to victim had a logical bearing on whether defendant continued to engage in deviate sexual intercourse with victim. *See State v. Nolan,* 717 S.W.2d 573 (Mo.App.1986) (Book depicting sex acts which was shown to victim by defendant was relevant as it tended to create an atmosphere of "sex consciousness" and demonstrated defendant's pattern of conduct and preoccupation with sex). The trial court may have found the display of the condom to victim and defendant's accompanying remark that "there [were] other things we [could] do" reflected the sexual and erotic nature of their relationship, and therefore had a logical bearing on whether deviate sexual intercourse was occurring. The trial court did not abuse its discretion in finding the nickname and display of condom relevant issues.

Defendant next argues Werges's testimony concerning the nickname and condom was not relevant because it did not corroborate a relevant fact and because there was no significant relation or connection between Werges's testimony and victim's testimony. Additionally, defendant contends the prosecution did not establish a "significant nexus in time" between Werges seeing the condom and victim seeing the condom. Evidence is relevant if it tends to corroborate other relevant evidence. *State v. Wayman,* 926 S.W.2d 900, 905 (Mo.App.1996).

■ Werges's testimony that defendant's nickname was "trigger" was relevant in that it corroborated victim's testimony recounting defendant's nickname. As stated above, the nickname was a relevant issue and permitting corroborative evidence of its existence was not an abuse of discretion. In addition, Werges's testimony that defendant had carried and displayed a condom during a ridealong corroborated victim's testimony that defendant was prepared for and willing to engage in sexual encounters during working hours. Merely because the display of the condom to Werges occurred several weeks after the display to victim does not preclude admission of the evidence. The remoteness of evidence goes to its weight and not to its admissibility. *State v. Williams,* 922 S.W.2d 845, 853 (Mo.App. 1996). The trial court did not abuse its discretion in finding Werges's testimony was relevant since it corroborated the testimony of victim.

■ Defendant further argues Werges's accounts of the condoms and the nickname improperly bolstered an unimpeached witness. He asserts since victim's credibility had not been attacked, the state should not have been allowed to corroborate and bolster victim's testimony. Improper bolstering occurs when an out-of-court statement of a testifying witness is offered solely to be duplicative or corroborative of his or her trial testimony. *State v. Ramsey,* 864 S.W.2d 320, 329 (Mo.1993). However, this does not apply where other evidence on the same subject is admitted either through a written statement or

712

through the oral testimony of other witnesses. *State v. Brown*, 984 S.W.2d 535, 538 (Mo.App.1998).

■ Although the victim was never impeached, improper bolstering did not occur because out-of-court statements by the victim on these topics were not introduced at trial. Rather, the "corroborative" evidence consisted of Werges's eyewitness testimony concerning a condom and testimony concerning defendant's nickname. Nor is Werges's eyewitness testimony either reputation or opinion testimony concerning the character of victim, as defendant further argues. As such, the trial court did not abuse its discretion in finding Werges's testimony did not improperly bolster the testimony of victim.

■ Defendant next argues Werges's account of the "trigger" nickname was not warranted by the rule of necessity and the admission of the nickname was prejudicial to defendant. The rule of necessity permits witnesses to refer to a criminal defendant by his or her nickname, if that is the name by which the witness is familiar with the defendant or if it aids in the identification of the defendant. *State v. Nettles*, 10 S.W.3d 521, 526 (Mo.App.1999).

Defendant argues that because he was not known primarily by his "trigger" nickname to the witnesses and because the nickname did not aid in his identification, the evidence was not relevant and should not have been admitted. However, the trial court may have found evidence of the nickname was relevant for other reasons including those stated *supra*, namely that through the use of the nickname, defendant attempted to create an atmosphere of "sex consciousness" that enabled him to perform deviate sexual intercourse with victim on multiple occasions. As such, the trial court did not abuse its discretion in finding the nickname relevant.

■ Defendant additionally argues Werges's testimony concerning the nickname and the display of the condom improperly attacked the character of defendant prior to defendant offering any character evidence. It is well settled that reputation or character testimony is admissible only when the defendant has put his own reputation in issue. *State v. Milligan*, 654 S.W.2d 204, 208 (Mo.App. 1983). Defendant contends since he never put his reputation at issue, evidence of the nickname and display of the condom was inadmissible character evidence. Assuming without deciding the nickname and condom were improperly admitted as character evidence, Werges's testimony was admissible on other grounds, namely it corroborated victim's testimony as to relevant issues in the case. *See supra*. No abuse of discretion has been shown.

■ Defendant further argues the testimony of both Werges and victim concerning defendant's display of a condom while on patrol related to a "bad act" unassociated with the charged crime. Evidence of prior uncharged crimes, wrongs or acts is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. *State v. Skillicorn*, 944 S.W.2d 877, 886 (Mo.1997). However, the admission of evidence to establish motive, intent, absence of mistake or accident, identity or common scheme or plan is permissible. *Id.* An additional exception is recognized for evidence of uncharged crimes and misconduct that are part of the circumstances or the sequence of events surrounding the offense charged. *State v. Harris*, 870 S.W.2d 798, 810 (Mo.1994).

■ Assuming without deciding that defendant's exhibiting of the condom to victim and Werges constituted a "bad act" covered under this doctrine, the trial court could have found the testimony admissible as evidence of motive or as part of the sequence of events surrounding the offense charged. By brandishing the condom to victim and subsequently discussing their sexual plans, defendant demonstrated his motive to continue their relationship on a sexual level. In addition, the condom, displayed prior to the end of their affair, was

relevant in presenting a complete and coherent picture of their sexual relationship which included eight counts of second-degree sodomy. The trial court did not abuse its discretion in allowing testimony from either victim or Werges concerning the condom.

Finally, defendant argues that the testimony regarding the condom and the nickname was highly inflammatory and that the prejudicial effect of the testimony outweighed any possible probative value. Defendant contends the condom incidents and the nickname allowed the state to paint him as an oversexed, well-endowed womanizer who was always prepared for a sexual encounter by carrying condoms during working hours. As such, defendant complains the jury was given a license to speculate and convict defendant on improper grounds. It is for the trial court to decide whether the probative value of evidence outweighs its prejudicial effect, and such decision will not be disturbed unless it is a clear abuse of discretion. *State v. Wayman*, 926 S.W.2d 900, 905 (Mo.App. 1996). As stated above, evidence of the nickname and the condom was probative and relevant; the trial court did not abuse its discretion in finding that the evidence's probativeness outweighed any prejudice based upon defendant's sexual tendencies or genitalia size.

Moreover, even if we were to find the trial court erred in admitting the testimony of the condoms and the nickname, we reverse "only if the error was so prejudicial that it deprived defendant of a fair trial." *Santillan*, 1 S.W.3d at 579. In light of the direct testimony of victim detailing the deviate sexual intercourse and the testimony of the sergeant regarding victim's acknowledgment of the sexual relationship, we cannot say that the infrequent mention of a seldom used nickname and defendant twice producing a prophylactic from his pocket was so prejudicial that it deprived defendant of a fair trial. Point denied.

In his fourth and seventh points on appeal, defendant argues the trial court erred in admitting evidence of prior sexual relationships between victim and two other Eureka police officers. He asserts this evidence is barred by the doctrine of *res inter alios acta* and Missouri's rape shield statute. In addition, he claims the evidence is highly inflammatory and violates an agreement between the prosecutor and the defense counsel that the prior bad acts of the victim would not be introduced at trial.

Prior to trial, the prosecutor filed a motion in limine prohibiting defense counsel from introducing any evidence of prior bad acts of the victim or any bad acts of the victim that were not somehow relevant to the salient issues in the case. However, throughout the course of the trial, numerous witnesses, including the victim, mentioned victim's sexual relationships with two other Eureka police officers. Some of the testimony concerning the prior relationships was objected to on hearsay grounds, and some of the testimony, including victim's brief account of her sexual history with the two officers, was not objected to at all. A party on appeal is held to the specific objections presented to the trial court. *State v. Reed*, 971 S.W.2d 344, 348 (Mo.App.1998). Only those objections or grounds of objection which were urged in the trial court, without change and without addition, will be considered on appeal. *State ex rel. Selby v. Day*, 929 S.W.2d 286, 288 (Mo.App.1996). Therefore, we review defendant's contentions that the testimony was admitted contrary to the doctrine of *res inter alios acta* and in violation of the rape shield statute for plain error only. *Reed*, 971 S.W.2d at 348. Relief will be granted under the plain error rule only when the error so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Fleer*, 851 S.W.2d 582, 592 (Mo. App.1993).

The doctrine of *res inter alios acta* prohibits the introduction of collateral facts which by their nature are incapable of affording any reasonable presumption or inference as to the principal matter in dispute. *State v. Wickizer,* 583 S.W.2d 519, 524 (Mo.App.1979). Evidence as to acts, transactions or occurrences to which accused is not a party, or as to other matters with which he or she is not shown to have any connection is inadmissible unless it is so interwoven with other relevant evidence as to make it impossible to try the case without admitting it. *Id.*

Victim's prior sexual relations with two Eureka police officers provided context for defendant's investigation and early meetings with victim. The trial court could have concluded that rumors of the prior sexual relationships enticed defendant to become sexually involved with victim and the relationships were so interwoven with the other relevant evidence that admission was proper. As such, the trial court did not plainly err in permitting testimony of victim's prior sexual relationships into evidence.

Defendant also asserts victim's prior sexual conduct was inadmissible due to Missouri's rape shield statute. The rape shield statute, section 491.015 RSMo (1994), provides that in prosecutions related to sexual conduct, the opinion and reputation evidence of a complaining witness' prior sexual conduct is inadmissible. The Rape Shield Statute is designed to protect the victim. *State v. Sloan,* 912 S.W.2d 592, 598 (Mo.App.1995). It was not intended to provide a shield to defendants accused of sex crimes. *State v. Maynard,* 714 S.W.2d 552, 557 (Mo.App.1986). Consequently, defendant cannot complain the admission of victim's prior sexual relationships violated his rights under section 491.015. There is no error, plain or otherwise.

Finally, defendant asserts the prejudicial effect of this evidence is great enough to outweigh its probative value. As such, the trial court should have excluded the evidence. We cannot say the trial court plainly erred in finding the probative value of the evidence outweighed the prejudicial effect. We also reject defendant's claim that admission of the prior sexual relationships violated an agreement between the prosecutor and the defense counsel. This "agreement" arose from a motion in limine by the state prohibiting *defense* counsel from introducing any evidence of prior bad acts of the victim. Moreover, the record is bereft of any agreement by the state to withhold evidence of victim's prior sexual relationships. Such argument is without merit. Point denied.

Defendant's fifth point on appeal contends the trial court erred in permitting the victim to testify that after her first sexual encounter with defendant, she returned with defendant to his home and played with his children causing her to feel "horrible." He contends this information was irrelevant, immaterial, highly prejudicial, and highly inflammatory.

Victim's testimony detailing the aftermath of the October 31 sexual encounter was neither objected to at trial nor raised in defendant's motion for a new trial. Therefore, we review only for plain error. The prosecution was permitted to present a complete and coherent picture of the events surrounding the crime. *See State v. Flenoid,* 838 S.W.2d 462, 467 (Mo. App.1992). The admission of testimony that defendant and victim visited defendant's house immediately after the commission of the crime and that victim felt "horrible" while playing with defendant's children did not substantially affect the rights of defendant such that manifest injustice or a miscarriage of justice occurred. Point denied.

Defendant's sixth point on appeal complains the trial court erred in admitting evidence that defendant had circled the date of July 15 on a calendar in the sergeant's office at the Eureka police department. Defendant contends the state offered this evidence as proof of the date of

victim's seventeenth birthday and the date on which he and victim would have sexual intercourse. He argues the calendar and the discussion surrounding it were irrelevant to the crimes charged, evidence of an inadmissible bad act, and overly prejudicial.

Defendant made a motion in limine to preclude the state from "referencing an incident" where he circled the date on his calendar relating to the victim's seventeenth birthday. The trial court denied the motion. A calendar which had been taped to defendant's desk and on which the date July 15 had been circled was admitted into evidence without objection. In her testimony, victim reported she had been conversing with defendant in his office about "getting a hotel room" when she turned seventeen. Victim testified that following this discussion, defendant proceeded to "circl[e] calendars" to indicate the date on which victim would turn seventeen.

■■■■ A motion in limine, in and of itself, preserves nothing for appeal. *State v. Cosby*, 976 S.W.2d 464, 467 (Mo.App. 1998). Failure to object at the earliest opportunity to the admission of evidence or argument of counsel constitutes a waiver of the claim. *Id.* Because defendant failed to object when the calendar was admitted into evidence, he is deemed to have waived his claim. We nevertheless review for plain error.

■■■■ Evidence of uncharged crimes, wrongs, or acts is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. *State v. Morrison*, 980 S.W.2d 332, 334 (Mo.App. 1998). Evidence of other crimes or bad acts is admissible, however, if it is logically and legally relevant and tends to establish motive, intent, absence of mistake or accident, or a common scheme or plan. *Id.* The trial court could have believed the circled calendar and the discussion surrounding victim's seventeenth birthday suggested defendant and victim were al-

ready involved in an intimate relationship and thus deemed the evidence relevant. In addition, the trial court could have believed the calendar and the discussions were relevant to demonstrate a common plan of defendant to pursue his sexual relations with victim on a more intimate level. Moreover, we cannot say the trial testimony surrounding the calendar and the birthday discussion, constituting a small portion of the six-hundred page trial transcript, was so inflammatory and prejudicial as to affect the substantial rights of the defendant resulting in a miscarriage of injustice or a manifest injustice. The trial court did not plainly err in admitting the testimony. Point denied.

Defendant's eighth point on appeal contends the trial court abused its discretion in admitting multiple hearsay statements made by various prosecution witnesses. In particular, defendant complains of statements made by the chief, the lieutenant, and the sergeant regarding sexual relations between victim and defendant. Defendant argues the admission of this testimony was merely a pretext to present cumulative evidence regarding the sexual relations and resulted in prejudice and improper bolstering of the victim's testimony.

■■■■ Hearsay evidence is testimony about a statement made by an out-of-court witness offered to show the truth of the matter asserted. *State v. McNeal*, 986 S.W.2d 176, 179 (Mo.App.1999). Generally, hearsay is objectionable because the one making the statement is not under oath or subject to cross-examination. *Id.* Testimony of what another said, offered in explanation of conduct, is not inadmissible hearsay. *State v. Chapman*, 936 S.W.2d 135, 138 (Mo.App.1996). Testimony is admissible if it explains subsequent police conduct and supplies background and continuity. *McNeal*, 986 S.W.2d at 179. Whether to admit or exclude this evidence is a matter of trial court discretion. *Id.*

■■■■ At trial, the lieutenant testified the chief had said a part-time jail clerk

overheard victim telling another explorer she was having sexual relations with two officers. This prompted the initial investigation headed by defendant after which he concluded the allegations against the two officers were "bogus." The chief testified a school resource officer had said she had heard rumors that several police officers were sexually involved with victim. The sergeant testified victim told him she was sexually involved with three police officers. In addition, the chief and the lieutenant testified the sergeant explained to them that victim had told him of the sexual relationships. The rumors and the sergeant's conversations with victim reactivated the investigation in March 1998 and led to the St. Louis County police department becoming involved in the investigation.

■ The testimony of the sergeant, the lieutenant, and the chief was not offered for the truth of the matter asserted, rather to explain the course of the police investigations. Our case is inapposite to *State v. Seever*, 733 S.W.2d 438 (Mo.1987), relied upon by defendant, as *Seever* involved introducing a videotape of a victim's explanations into evidence as well as permitting the victim to later testify as to the identical issues. *Id.* at 441. Here, the trial court permitted the testimony of police officers to explain the reasons for initiating an investigation, not to corroborate, bolster, or unduly reinforce victim's testimony. *See Chapman*, 936 S.W.2d at 138–39 (DFS employee's testimony concerning victim's allegations of sexual abuse not hearsay because it was offered to explain catalyst for investigation). As such, the trial court did not abuse its discretion. Point denied.

In his ninth point on appeal, defendant argues the trial court erred by instructing the jury that defendant would be guilty of statutory sodomy in the second degree if victim "put her mouth on defendant's penis." Defendant contends these instructions deviated from the Missouri Approved Instructions and constituted an incorrect misstatement of the law as they did not require a voluntary act on defendant's part to be found guilty.

■ Failure to comply with the Missouri Approved Instructions – Criminal and the applicable Notes on Use is presumed prejudicial. *State v. Roe*, 6 S.W.3d 411, 415 (Mo.App.1999). However, at the instruction conference, defendant failed to object to the instructions on the grounds they did not comply with the Missouri Approved Instructions. In addition, defendant failed to raise the issue in his motion for a new trial. The rule in Missouri is that an objection to an instruction cannot be raised for the first time on appeal. *Cooks v. Normandy School Dist.*, 778 S.W.2d 339, 341 (Mo.App.1989). Nevertheless, we review for plain error. *Id.* Instructional error seldom constitutes plain error; plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict. *Roe*, 6 S.W.3d at 415.

Using the Missouri Approved Instructions – Criminal, the four verdict directors at issue should have read:

As to [Counts 1, 3, 7, and 9] if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about [date], in the County of St. Louis, State of Missouri, the defendant [describe acts constituting deviate sexual intercourse] with [J.L.], and…

However, paragraph first of the four verdict directors at issue actually read, in part:

…

First, that on or about [date], in the County of St. Louis, State of Missouri, [J.L.] put her mouth on the defendant's penis, and…

■ Defendant alleges because the verdict director given to the jury did not require a physical action by the defendant in order to be found guilty, it was prejudi-

cial and led to conviction on a lesser standard of proof. We disagree. A person commits the crime of statutory sodomy in the second degree if being twenty-one years of age or older, he has deviate sexual intercourse with another person who is less than seventeen years of age. Section 566.064 RSMo (1994). "Deviate sexual intercourse" means *any* act involving the genitals of one person and the mouth of another person. Section 566.010(1) RSMo (1994) (emphasis added). There is no element of this crime that would necessarily require defendant to be the subject of the verb in the jury instructions. *See Roe*, 6 S.W.3d at 415 (In determining whether the misdirection likely affected the jury's verdict, an appellate court will be more inclined to reverse in cases where the erroneous instruction did not merely allow a wrong word or some other ambiguity to exist, but excused the State from its burden of proof on a contested element of the crime). As such, the deviation from the Missouri Approved Instructions—Criminal did not affect the jury verdict, nor did a miscarriage of justice or a manifest injustice occur. Point denied.

Defendant's final point on appeal contends the combined effect of the numerous trial court errors as set forth in points relied on 1 through 6 was so overwhelmingly prejudicial that defendant was denied a fair trial. In particular, defendant argues the admission of the nickname, condom testimony, hearsay testimony, calendar and accompanying explanation, and testimony concerning victim's other sexual activities cumulatively resulted in extreme prejudice.

The Missouri Supreme Court has held "[n]umerous non-errors cannot add up to error." *State v. Gray*, 887 S.W.2d 369, 390 (Mo.1994). Having determined that none of defendant's previous points amount to reversible error, there can be no reversible error attributable to their cumulative effect. *See Id.* Point denied.

Judgment affirmed.

RICHARD B. TEITELMAN, P.J., concurs.

LAWRENCE E. MOONEY, J., concurs.