**STATE of Missouri, Respondent,**

v.

**Phillip Ernest BLOM, Appellant.**

**No. WD 58546.**

Missouri Court of Appeals,
Western District.

May 1, 2001.

---

**520**

Earl F. Seitz, Esq., Columbia, for Appellant.

Conne Sullivan, Esq., Columbia, for Respondent.

Before ELLIS, P.J., LOWENSTEIN and BRECKENRIDGE, JJ.

LOWENSTEIN, Judge.

### Factual and Procedural History

Appellant appeals from his conviction of one misdemeanor count of animal abuse under § 578.012, RSMo 2000.[1] The action arose when trees fell on July 3, 1999, and downed Appellant's fence. Approximately thirty of Appellant's cattle escaped and entered Nancy Newton's pond and soybean fields, spreading over an area of fifteen to twenty acres and damaging her crop.

At trial, the State, without objection, introduced evidence of prior incidents of cattle escaping. The first was a stipulation between the State and Appellant that prior to April of 1997, Appellant's cattle were "at large" at least ten to fifteen times. The stipulation also stated that because of those events, the Boone County circuit court had issued a permanent injunction requiring Appellant to maintain an adequate fence structure/enclosure to keep his cattle confined.

In addition to the stipulation and the testimony of Nancy Newton, several of Appellant's other neighbors testified. Margaret Wingo testified that in the summer of 1999, Appellant's cattle were on her property two or three times and that over the years one of Appellant's reasons for his cattle escaping was that trees fall on the fence. Raymond Watson testified that Appellant's cattle had escaped onto his property several times in the last few years. The owner of a local hardware store, Erman Call, testified that he has known Appellant to have trouble restraining his cows over the fifteen years that he has known Appellant and that one of Appellant's explanations was that trees sometimes fall across the fence.

There was also evidence that Appellant did not take proper precautions to prevent

---

1. All further statutory references are to RSMo 2000, unless otherwise indicated.

cattle from escaping. Erman, who owned cattle for approximately twenty years, testified that "it's a constant battle to keep the fences mended. It has to be done literally on a daily basis." Another neighbor, who has kept cattle for sixty-one years and whose farm was damaged by Appellant's cattle, testified that he had to "run [his] fences pretty regular" in order to avoid having his cattle escape. Appellant, however, testified that he checked for fence problems only once every two or three days or so because "usually if that's going to happen, it's going to happen in two or three days time and usually a tree don't [sic] fall down every day." He also testified that "there's trees down all the time along there," in part because of beavers and in part because three-quarters of his farm is bordered by a creek, which gives rise to problems with soil saturation.

Appellant was sentenced to ninety days in the Boone County Jail; execution was suspended, and Appellant was placed on two years of unsupervised probation. He was also ordered to pay restitution.

### Standard of Review

■ The review of a court-tried case is the same as in a jury-tried criminal case. *State v. Daniels*, 18 S.W.3d 66, 67–68 (Mo. App.2000). This court will uphold the trial court's decision unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *State v. Owen*, 990 S.W.2d 158, 159 (Mo.App.1999).

This court accepts the State's evidence as true and gives the State the benefit of all reasonable inferences and disregards all evidence to the contrary. *Daniels*, 18 S.W.3d at 68. In so reviewing, this court

notes that witness credibility is a matter for the trial court and that review is limited to determining whether the State introduced evidence sufficient for a reasonable fact-finder to find each element of the offense charged beyond a reasonable doubt. *Id.*

### Analysis

■ Under § 578.012.1(3), a person is guilty of animal abuse when a person "[h]aving ownership or custody of an animal knowingly fails to provide adequate care or adequate control." [2] In his sole point on appeal, Appellant argues that the trial court erred in finding him guilty of animal abuse because the prosecutor failed to prove the requisite *mens rea* for the offense; specifically, Appellant argues that he did not act "knowingly."

■ Under Section 562.016.3, a person acts knowingly when he is aware of the nature of his conduct or that his conduct is practically certain to cause a particular result. Knowledge may be proven by circumstantial evidence. *State v. White*, 28 S.W.3d 391, 396 (Mo.App.2000). In fact, because direct evidence of a particular mental state is seldom available, proof of the mental state will usually rest on circumstantial evidence and permissible inferences. *State v. Gooden*, 962 S.W.2d 443, 445 (Mo.App.1998). Moreover, the State "may establish the mental element by evidence of and inferences from the accused's conduct before the act, the act itself, and the accused's conduct after the act." *Id.*

The State produced substantial evidence that Appellant knew his cattle would escape. The most damning evidence was

---

**2.** Section 578.005.1 defines "adequate care" as "normal and prudent attention to the needs of an animal...." Section 578.005.2 defines "adequate control" as "to reasonably restrain or govern an animal so that the animal does not injure itself, any person, any other animal, or property."

Appellant's own testimony regarding how often he checked his fences compared with other farmers. The State produced testimony from farmers that in order to keep cattle from getting out, it is essential that fences be checked regularly and frequently. Appellant admitted, in his own testimony, that he did not check his fences with the regularity and frequency suggested by those witnesses. The trial court could reasonably find that the State's witnesses were credible, and, from Appellant's admission, that he was aware his conduct was practically certain to result in his cattle crossing the fences onto neighboring land. As noted *supra,* assessing the credibility of witnesses is within the province of the trial court, not the appellate court. *Daniels,* 18 S.W.3d at 68.

The frequency that Appellant checked his fences is particularly noteworthy given that Appellant admitted that because three-quarters of his farm is bordered by a creek, his farm is more susceptible to downed trees and escaped cattle than other farms. Moreover, the permanent injunction issued against Appellant put him on notice that he needed to improve his method of confining his cattle. As such, giving the State the benefit of all reasonable inferences, it is clear that Appellant had knowledge sufficient to meet the statutory requirement that his conduct was practically certain to cause a particular result, and thus he knowingly failed to adequately care for or control his cattle.

Appellant also argues that his case is similar to *Driver v. Germann,* a civil action in which the Drivers obtained a judgment against Germanns because the Germanns' animals crossed a fence and damaged their soybean fields. 637 S.W.2d 778 (Mo.App. 1982). At issue was a civil statute, § 272.030, RSMo 1978, imposing liability on the owners for their animals breaking a fence and causing damage. *Id.* at 780.

This case was reversed because a storm caused a tree to fall and break the fence—an independent cause. *Id. Driver* is distinguishable. First, *Driver* is not dispositive because it involves civil liability on an entirely different statute. Second, the case is factually distinguishable. In *Driver,* the statute at issue applied to cattle breaking over or through a lawful fence, but the fence broke because of a storm. *Id.* The Germanns were not liable not only because their cattle did not break the fence, but also because the tree that damaged the fence belonged to the Drivers, not the Germanns. *Id.*

In the case at bar, under § 578.012.1(3), Appellant was required to provide adequate care or adequate control of his animals, which in this case included checking his fences regularly. Because of his failure to do so, his cattle escaped numerous times. He was convicted for only one of those times, even though the testimony and stipulation indicates that: 1) prior to 1997, his cattle escaped ten to fifteen times so as to warrant a permanent injunction, and 2) even after the injunction was ordered, Appellant still failed to maintain an adequate fence. Based on the evidence before the trial court and all reasonable inferences therefrom, this court holds that the State proved beyond a reasonable doubt that Appellant was aware that his conduct was practically certain to cause cattle to escape and thus knowingly failed to provide adequate care or adequate control them under § 578.012.1(3). This point is denied and the judgment of the trial court is affirmed.

All concur.