**STATE of Missouri, Respondent,**

v.

**Paul M. LEE, Appellant.**

**No. ED 94063.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 11, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 1, 2011.

Application for Transfer Denied March 29, 2011.

Craig A. Johnston, Columbia, MO, for appellant.

Chris Koster, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Mary H. Moore, Asst. Atty. Gen., for respondent.

LAWRENCE E. MOONEY, Judge.

The defendant, Paul Lee, appeals the judgment entered by the Circuit Court of

Washington County after a jury convicted him of attempted first-degree burglary, in violation of sections 569.160 and 564.011 RSMo. (2000);[1] unlawful use of a weapon motivated by discrimination, in violation of section 571.030.1(4) RSMo. (2000 & Supp. 2009); third-degree assault, in violation of section 565.070; and second-degree property damage, in violation of section 569.120. He challenges the sufficiency of the evidence to support his convictions for attempted burglary, unlawful use of a weapon, and property damage. Because we find the evidence sufficient, we affirm.

### Factual Background

The victim, Bobby O'Neal, lived with his parents in Potosi, Missouri, two houses down from the defendant. On July 5, 2008, the victim's parents had been away on vacation for about ten days, and the victim had three friends visiting his house, Blake Rulo, Robert Roberts, and Ryan Skaggs. A couple of days earlier, an incident had occurred, principally involving Skaggs and his family and the defendant. A police officer had responded to a call at that time and found the defendant in the street, apparently drunk, threatening to "fuck that nigger up."

In the evening of July 5, 2008, the defendant and other persons saw Skaggs near the victim's home, and began yelling at him. Skaggs returned to the victim's home and warned his friends that the defendant and others were coming after them. The defendant and two other men "ran up and charged towards the house." They pounded and kicked at the door, pulled on the door knob, shouted racial slurs, threatened to beat the victim, and demanded that he come outside. The victim testified that he feared the men were trying to break down the door because of the force they were using. Rulo testified

that he believed the defendant was coming in because he was "banging on the door, and kept on trying to open it with his—like pulling on the door handle."

The victim and his friends hid inside the house with the doors locked and the lights off. When the pounding on the door stopped, they looked out the windows and saw that the defendant and the two other men had gone to the park across the street from the victim's house. At the park, the three men grabbed pointed two-by-four boards and headed back toward the victim's home. In the meantime, Skaggs had called the police. The police arrived just as the men were approaching the street with the boards in hand. The men dropped the boards directly across the street from the victim's home and ran. When police located the defendant shortly thereafter, he was sweating and breathing heavily as if he had been exerting himself. The police described him as acting in an aggressive and belligerent manner toward them. Police observed and photographed numerous dents and scuffs on the door of the victim's home, which were consistent with the description of events provided by the victim and his friends.

The State charged the defendant with attempted first-degree burglary, unlawful use of a weapon motivated by discrimination, third-degree assault, and second-degree property damage. The jury convicted the defendant on all counts, and the trial court sentenced him to a total of ten years of imprisonment: a term of seven years for the attempted burglary; a consecutive three-year term for the unlawful use of a weapon; and fifteen days for the assault and 180 days for the property damage, to be served concurrently with all other sentences. The defendant appeals.

---

1. All statutory references are to RSMo. (2000) except as otherwise indicated.

## Standard of Review

When a defendant challenges the sufficiency of the evidence, we accept as true all evidence favorable to the State, including all favorable inferences drawn from the evidence, and we disregard all evidence and inferences to the contrary. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993). An "inference" is a conclusion drawn by reason from facts established by proof. *State v. Foster,* 930 S.W.2d 62, 64 (Mo.App. E.D.1996). We limit our review to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Grim,* 854 S.W.2d at 405. Furthermore, it is within the province of the jury to believe all, some, or none of any witness's testimony in reaching its verdict. *State v. Kuhlenberg,* 981 S.W.2d 617, 621 (Mo.App. E.D. 1998).

## Discussion

In three points on appeal, the defendant challenges the sufficiency of the evidence to support his convictions for attempted first-degree burglary, unlawful use of a weapon motivated by discrimination, and second-degree property damage.

In his first point, the defendant asserts that the State failed to prove that he struck the victim's door with the purpose of gaining entry to assault the victim. As charged here, a person commits the crime of first-degree burglary if he knowingly enters unlawfully an inhabitable structure for the purpose of committing a crime therein, and another person, who was not a participant in the crime, was present in the structure. Section 569.160.1(3). A person is guilty of an attempt to commit a crime when he takes a substantial step toward committing the crime with the purpose of completing it. Section 564.011.1. A "substantial step" is conduct that strongly cor-

roborates the firmness of the actor's purpose to complete the crime. *Id.* The amended information charged that the defendant knowingly attempted to enter unlawfully in an inhabitable structure for the purpose of committing assault therein, and that the victim, who was not a participant in the crime, was present in the inhabitable structure.

The defendant challenges the sufficiency of the evidence regarding his intent to enter the house to assault the victim. Because direct evidence of a particular mental state is seldom available, proof of the defendant's mental state usually rests on circumstantial evidence and permissible inferences. *State v. Blom,* 45 S.W.3d 519, 521 (Mo.App. W.D.2001). The State may establish the mental element of a crime by evidence of, and inferences from, the defendant's conduct before the act, the act itself, and conduct after the act. *Id.*

Here, the uncontroverted evidence shows that the defendant, along with others, threatened the victim, "charged" onto the victim's front porch, repeatedly struck the door hard enough to dent it, pulled on the doorknob and "kept on trying to open it," shouted racial slurs, further threatened to beat the victim, and demanded that the victim come outside. When the defendant's efforts to force open the door proved unsuccessful, he and his companions went across the street, grabbed pointed two-by-four boards, and headed back toward the victim's home, abandoning their endeavor only when the police arrived.

From these facts, the jury could reasonably infer that the defendant repeatedly pounded and kicked on the door, and pulled on the doorknob in an effort to gain entry. The defendant's multiple threats to harm the victim could lead a reasonable

jury to infer that the defendant intended to assault the victim. And the defendant's retrieval of a board could lead the jury to reasonably infer that the board might be used to break out the window in the door to gain entry to the home and to assault the victim. We deny the defendant's first point.

In his second point, the defendant asserts that the evidence was insufficient to establish beyond a reasonable doubt that the board he was holding was a "weapon," as the term is used in the statute, or that he exhibited the board in the presence of one or more persons in an angry or threatening manner.

As charged here, a person commits the crime of unlawful use of a weapon if he knowingly exhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry and threatening manner. Section 571.030.1(4) RSMo. (2000 & Supp.2009). The State also charged that the defendant's action was motivated by the victim's race. Section 557.035.1.

■ The defendant first contends that the board was not a "weapon." Section 571.030.1(4) RSMo. (2000 & Supp.2009) does not define the term "weapon." The determination of whether an object constitutes a "weapon" within the meaning of the statute depends on several factors, namely: 1) the nature of the instrument itself; 2) the circumstances under which it is carried, including the time, place, and situation in which the defendant possesses it; 3) the manner in which it is carried; 4) the particular person carrying it; and 5) perhaps other factors, such as possible peaceful uses that the possessor might have for the object. *Foster*, 930 S.W.2d at 64.

■ Here, the board the defendant carried was a two-by-four with a pointed end. The defendant retrieved the board moments after unsuccessfully attempting to break into the victim's home, shouting racial slurs at the victim, and threatening to beat the victim. The defendant was walking back toward the victim's home with the board when the police arrived, and only then did the defendant abandon it. When confronted by police a short time later, the defendant acted in an aggressive and belligerent manner. Under these circumstances, we perceive no legitimate or peaceful use for the board. Rather, the defendant possessed the board because he intended to use it to break into the victim's home and assault him. Under these circumstances, the board constituted a "weapon" readily capable of lethal use as that term is used in section 571.030.1(4) RSMo. (2000 & Supp.2009).

■ The defendant next argues that the evidence was insufficient to prove that he exhibited the board to one or more persons in an angry or threatening manner. He alleges that he "was merely carrying the board." We disagree with the defendant's characterization. The jury could reasonably infer that the defendant exhibited the board in an angry or threatening manner because the victim and his friends watched the defendant carry the board toward the victim's home, moments after trying to break down the victim's door, shouting racial slurs at the victim, and threatening to beat him. We deny the defendant's second point.

■ In his third and final point, the defendant asserts that the State failed to prove that he damaged the victim's door. We disagree. A person commits second-degree property damage if he knowingly damages the property of another. Section 569.120.1(1).

Immediately after the defendant pounded and kicked the victim's door, it had dents and scuff marks on it consistent with the description of events provided to the police by the victim and his friends. The damage to the door was not there when

the victim's parents left for vacation some ten days earlier. And the victim testified that nothing had happened to the door between the time his parents left and the time the defendant struck the door. The victim's landlord also testified that he checked on the house at least every two weeks, and that he had seen no damage to the front door before the police called him to come inspect the damage on the night of July 5, 2008. From this evidence, the jury could reasonably infer that the defendant damaged the victim's door when he repeatedly struck it. We deny the defendant's third point.

### Conclusion

The State adduced sufficient evidence to prove beyond a reasonable doubt that the defendant committed attempted first-degree burglary, unlawful use of a weapon motivated by discrimination, and second-degree property damage. We affirm the trial court's judgment.

SHERRI B. SULLIVAN, P.J., and CLIFFORD H. AHRENS, J., concur.