In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

STATE OF MISSOURI, ) No. ED108591
 )
 Respondent, ) Appeal from the Circuit Court
 ) of Cape Girardeau County
vs. )
 ) Honorable Benjamin F. Lewis
BRANDON SHANE UMFLEET, )
 )
 Appellant. ) FILED: March 23, 2021

 Introduction

 Brandon Shane Umfleet (“Umfleet”) appeals from his convictions following a jury trial

on attempted burglary in the first degree and stalking in the first degree. Umfleet raises five

points on appeal. Points One and Two challenge the sufficiency of the evidence for attempted

first-degree burglary. Point One maintains the State failed to prove Umfleet attempted to

unlawfully enter Victim’s home while Point Two contends the State failed to prove Umfleet

attempted to do so with the intent to commit an offense therein. Both Points Two and Three

challenge the State’s failure to denote the specific object offense of attempted first-degree

burglary. Specifically, Point Two argues the evidence was insufficient to sustain the conviction

on attempted first-degree burglary because it failed to establish what specific offense Umfleet

intended to commit once he gained access to Victim’s home. Correspondingly, Point Three

maintains the trial court plainly erred in giving a jury instruction on attempted first-degree

burglary that failed to denote the specific object offense as required by the Missouri Approved
Instructions–Criminal (“MAI-CR”).1 Points Four and Five seek plain-error review of the trial

court’s failure to sua sponte intervene in the State’s cross-examination of Umfleet for exceeding

the permissible scope of impeachment on prior convictions and for improperly asking him to

opine on the truthfulness of another witness.

 Given the history of unwanted contact between Victim and Umfleet and evidence that

Umfleet was trying to enter through Victim’s window on the night of the incident, sufficient

evidence supported finding Umfleet took a substantial step towards unlawfully entering Victim’s

home, and we deny Point One. However, the State did not specify the intended object offense of

attempted first-degree burglary, and correspondingly failed to adduce sufficient evidence that

Umfleet attempted to commit the burglary with the purpose of committing a specific offense

once he gained entry. For this reason, we grant Point Two. Because our grant of Point Two is

dispositive of Point Three, we need not address Point Three. Because Umfleet fails to

demonstrate manifest injustice arose from the State’s cross-examination on his prior convictions

or Victim’s truthfulness, we deny Points Four and Five. Accordingly, we affirm in part and

reverse in part, reversing the conviction on attempted first-degree burglary and entering

judgment on the lesser-included offense of trespass in the first degree. We remand the matter for

the trial court to resentence the defendant consistent with this opinion.

 Factual and Procedural History

 The following facts are presented in the light most favorable to the trial verdict.

 Umfleet and Victim were dating and living together from 2013 to April 2017, when they

ended their relationship and Umfleet moved out of Victim’s home. Umfleet’s daughter

1
 All references to MAI-CR are to MAI-CR 4th (2017), unless otherwise indicated.

 2
continued to live with Victim and her son until May 2017 and Umfleet moved the last of his

belongings out of Victim’s residence in June 2017.

 Umfleet and Victim attempted to remain friendly and maintain a civil relationship.

Victim stopped all communication with Umfleet in May 2018 while Umfleet was in jail.

Sometime thereafter, Umfleet began to initiate communication with Victim. Umfleet texted,

called, and emailed her from both his accounts and other people’s accounts. Victim attempted to

block communications from him. When Umfleet posted photographs of Victim on social media,

Victim asked him to remove them and to leave her alone. Umfleet also left letters on her car at

her place of employment and would drive by her when she was walking to work.

 The incident giving rise to the burglary charge occurred on August 5, 2018. Victim was

home with her son, who had gone to sleep while she was watching television in bed. Victim

heard a “peck and then it became a knock,” on her window that “became a bang.” Victim then

heard knocking on the glass of the front door. Victim heard the knocking go back and forth

between her bedroom window and front door several times.

 Victim called her neighbor (“Neighbor”), because she believed as the mayor he would be

able to get the police to respond faster than she could. Neighbor called the police. Meanwhile,

Victim opened the outer front door, while keeping the glass storm door closed, and observed

Umfleet standing between her bedroom window and front door. Neighbor’s wife testified she

saw Umfleet standing with his hands up on each side of Vicitm’s bedroom window “like he was

trying to find a way to get in.” Victim shut the door, locked it, and waited for the police to

arrive. Umfleet left the scene. The next day, Umfleet left a letter on Victim’s car stating that if

she had asked him to leave he would have done so.

 3
 Following the August 5 incident, Victim applied for and was granted an order of

protection. The ex parte order was served on Umfleet on August 14. That same day, Umfleet

came to Victim’s place of employment with two other people and pointed out Victim to them.

Umfleet continued to send text and social media messages to Victim that month, making up new

social media profiles to circumvent Victim’s blocking of his accounts. Victim also learned that

Umfleet was sending messages to other people falsely claiming Victim was having an affair with

a woman’s husband. Victim also discovered Umfleet was creating fake social media profiles in

her name and posting private pictures of her.

 A hearing on the full order of protection was scheduled for August 27, 2018. The same

day, Umfleet called Victim from a number listed in her phone under the name of a mutual friend

of theirs, however, Victim recognized Umfleet’s voice. Umfleet told her she did not need to go

to court to get the order of protection, that she would be a fool, that it was ridiculous, and that it

would be in her best interest not to go to court.

 The State charged Umfleet with attempted burglary in the first degree and stalking in the

first degree based upon the August 5 incident.2 For the burglary charge, the Amended

Information alleged that Umfleet “tried to open a window at [Victim’s address] for the purpose

of unlawfully entering that inhabitable structure and such conduct was a substantial step toward

the commission of the offense of Burglary in the First Degree of [Victim’s address.]”

 The case proceeded to a jury trial. At trial, Umfleet testified in his own defense and

denied calling or messaging Victim from spoofed numbers or fake social media accounts. He

also denied leaving letters on Victim’s car. Umfleet testified that he and Victim had mutually

ended the relationship, that they stayed in touch, and that Victim continued to contact him after

2
 The offenses were originally charged in two separate cases, and the State filed an amended information after the
cases were consolidated following a change in venue.

 4
she obtained the restraining order. Umfleet denied knowing about the order of protection until

September 2018. Umfleet denied going to her workplace on August 14. Umfleet denied the

burglary incident, calling his father to testify that Umfleet had been home and did not leave on

the night of the incident.

 Umfleet also testified about his prior convictions. Umfleet initially testified that he had

“some possessions,” none of which were for stalking or domestic-violence offenses. On cross-

examination, the State asked Umfleet whether Umfleet’s prior convictions for fraudulently

obtaining a controlled substance were “more than a possession issue, right? You lied to get

drugs?” Umfleet repeatedly described his convictions as “possession issues” arising out of an

addiction to pain pills, and he denied one of the convictions on his record. The State questioned:

 You’re here testifying and telling these people don’t believe a word she says.
 Everything she says is garbage. All the text messages are fabrications. Don’t
 believe anything she says, but this isn’t relevant for them whether they should
 believe you or not––that on three occasions you pled guilty to a felony that involved
 fraud, deceit to get drugs, correct?

The State also asked Umfleet, “So if I understand you correctly, everything that she has testified

to is a lie and everything you have testified to is the truth?” Umfleet responded, “I’m not saying

that,” and reiterated his own defense that he never sent certain text messages. Umfleet raised no

objection to the State’s questioning.

 The trial court provided the jury with instructions. In Instruction No. 5, the trial court

instructed the jury to find Umfleet guilty of attempted burglary in the first degree if it found that

Umfleet: (1) tried to open a window at Victim’s home for the purpose of unlawfully entering that

inhabitable structure, (2) that such conduct was a substantial step toward the commission of the

offense of burglary in the first degree of victim’s home, and (3) that Umfleet engaged in such

conduct for the purpose of committing such burglary in the first degree, then you will find

 5
Umfleet guilty. Instruction No. 5’s definition of first-degree burglary included knowingly

entering unlawfully into an inhabitable structure for the purpose of committing a crime therein,

and while entering the inhabitable structure there was present another person who was not a

participant in the crime. The jury instructions did not specify the intended object offense of the

attempted burglary. Umfleet did not object to the instructions.

 During jury deliberations, the jury sent a question to the trial court asking about the

definition of first-degree burglary. The trial court referred them to Instruction No. 5. The jury

then returned verdicts of guilty on both counts.

 The trial court sentenced Umfleet to ten years in jail for attempted first-degree burglary

and seven years for stalking, to run concurrently. The trial court also revoked Umfleet’s

probation in another case and executed his seven-year sentence on that charge. Neither the legal

file nor supplemental legal file filed with this appeal contain a motion for new trial, leaving us to

conclude that Umfleet did not raise any of the claims he now brings on appeal in a motion for

new trial. This appeal follows.

 Points on Appeal

 Umfleet raises five points on appeal. Points One and Two challenge the sufficiency of

the evidence for attempted burglary in the first degree. Point One argues the evidence was

insufficient to sustain the judgment on attempted first-degree burglary because it failed to

establish that Umfleet attempted to unlawfully enter Victim’s home. Point Two contends the

evidence was insufficient to sustain the judgment on first-degree burglary because it failed to

establish the specific object offense Umfleet intended to commit therein. Relatedly, Point Three

maintains the trial court plainly erred in submitting the verdict directing Instruction 5 because the

 6
definition of attempted first-degree burglary failed to denote the specific object offense as

required by the MAI-CR Notes on Use for attempt.3

 Point Four asserts the trial court plainly erred in permitting the State to question Umfleet

about his prior convictions because the State’s questions went beyond credibility impeachment to

improperly reasoning that Umfleet’s prior bad acts made him more likely to have committed the

charged offenses. Lastly, Point Five argues the trial court plainly erred in failing to sua sponte

intervene when the State asked Umfleet whether Victim was lying because it is improper to ask

one witness to opine on the veracity of another witness in that credibility is a matter solely for

the jury’s determination.

 Standards of Review

 Points One and Two raise sufficiency-of-the-evidence challenges. Although Umfleet did

not raise the points in a motion for new trial, Rule 29.11(d)4 provides an exception that

sufficiency of the evidence to sustain a conviction need not be included in a motion for new trial

to be preserved for appellate review. Rule 29.11(d); State v. Lewis, 582 S.W.3d 162, 164–65 n.5

(Mo. App. W.D. 2019).

 We review challenges to the sufficiency of the evidence for “whether the State has

introduced sufficient evidence for any reasonable juror to have been convinced of the

defendant’s guilt beyond a reasonable doubt.” State v. Nash, 339 S.W.3d 500, 509 (Mo. banc

2011) (internal citation omitted). We do not reweigh the evidence but instead “accept as true all

evidence tending to prove guilt together with all reasonable inferences that support the verdict,

and ignore all contrary evidence and inferences.” State v. Holmes, 399 S.W.3d 809, 812 (Mo.

3
 Although Umfleet provided citation to MAI-CR 3d 304.06 for the pattern instruction for attempt, there is no
functional difference for purposes of this appeal from the applicable version MAI-CR 4th 404.06.
4
 All Rule references are to Mo. R. Crim. P. (2019).

 7
banc 2013) (internal quotation omitted). We evaluate “whether, in light of the evidence most

favorable to the State, any rational fact-finder could have found the essential elements of the

[offense] beyond a reasonable doubt.” Nash, 339 S.W.3d at 509 (internal quotation omitted).

However, we “will not supply missing evidence or grant the State unreasonable, speculative, or

forced inferences.” State v. Ajak, 543 S.W.3d 43, 46 (Mo. banc 2018) (internal quotation

omitted).

 In Points Three, Four, and Five, Umfleet seeks plain-error review because his points were

not preserved for appeal through objections at trial nor in a motion for a new trial. See State v.

Tramble, 383 S.W.3d 34, 38 (Mo. App. E.D. 2012) (internal citation omitted). Rule 30.20 grants

us discretion to review unpreserved claims of trial court error for plain errors affecting

substantial rights. State v. Brandolese, 601 S.W.3d 519, 526 (Mo. banc 2020). However, the

defendant bears the burden of demonstrating outcome-determinative manifest injustice entitling

the defendant to plain-error review, and “[u]nless manifest injustice or a miscarriage of justice is

shown, an appellate court should decline to review for plain error under Rule 30.20.” Id.

(internal quotation omitted). Under plain-error review, we first identify if the trial court

committed an error that is obvious and clear. Tramble, 383 S.W.3d at 38 (internal citation

omitted). Even if the trial court erred, we will not reverse on appeal unless the error resulted in

manifest injustice. Id.

 Discussion

I. Sufficiency of the Evidence for Attempted First-Degree Burglary

 In Points One and Two, Umfleet challenges the sufficiency of the evidence to support

finding Umfleet guilty of attempted first-degree burglary beyond a reasonable doubt. Point One

contends the State failed to establish attempted unlawful entry into Victim’s home. Point Two

 8
maintains the State failed to establish an intended object offense of burglary that Umfleet

attempted to commit.

 A person commits the offense of burglary in the first degree when the following statutory

elements are proved beyond a reasonable doubt:

 [H]e or she knowingly enters unlawfully or knowingly remains unlawfully in a
 building or inhabitable structure for the purpose of committing an offense therein,
 and when in effecting entry or while in the building or inhabitable structure or in
 immediate flight therefrom, the person or another participant in the offense:
 (1) Is armed with explosives or a deadly weapon; or
 (2) Causes or threatens immediate physical injury to any person who is not a
 participant in the crime; or
 (3) There is present in the structure another person who is not a participant in the
 crime.

Section 569.160.1;5 State v. Smith, 522 S.W.3d 221, 227 (Mo. banc 2017) (listing the elements

of first-degree burglary as: “(1) a knowing unlawful entry into a building or inhabitable structure;

(2) with an intent to commit a crime therein; (3) while armed with a deadly weapon”).6

Missouri’s general attempt statute provides the following:

 A person is guilty of an attempt to commit an offense if, with the purpose of
 committing the offense, a person performs any act which is a substantial step
 towards the commission of the offense. A “substantial step” is conduct which is
 strongly corroborative of the firmness of the actor’s purpose to complete the
 commission of the offense.

Section 562.012.1; see State v. Lee, 332 S.W.3d 267, 270 (Mo. App. E.D. 2011). The attempt to

commit first-degree burglary may be proved by circumstantial evidence. State v. Berryhill, 673

S.W.2d 444, 445 (Mo. App. E.D. 1982); see also Lee, 332 S.W.3d at 270. “Because direct

evidence of a particular mental state is seldom available, proof of the defendant’s mental state

usually rests on circumstantial evidence and permissible inferences.” Lee, 332 S.W.3d at 270

5
 All Section references are to RSMo (Cum. Supp. 2017), unless otherwise indicated.
6
 Here, the relevant third element was that there was present in the structure another person who was not a
participant in the offense, namely, Victim and Victim’s son.

 9
(internal citation omitted). “The State may establish the mental element of a[n] [offense] by

evidence of, and inferences from, the defendant’s conduct before the act, the act itself, and

conduct after the act.” Id. While the State need not prove every element of the attempted

offense, the State must prove the defendant took a substantial step as defined in Section

562.012.1, which “need not be the ultimate step toward, or the last possible act in the

consummation of the [offense] attempted.” State v. Bonich, 289 S.W.3d 767, 771 (Mo. App.

S.D. 2009) (internal quotation omitted).

 A. Point One—Sufficient Evidence of Attempted Unlawful Entry

 In Point One, Umfleet disputes the sufficiency of the evidence for the first element of

attempted first-degree burglary that Umfleet took a substantial step toward unlawfully entering

Victim’s home. See Section 569.160.1; Smith, 522 S.W.3d at 227.

 Taken in the light most favorable to the verdict, the evidence in the record shows that

prior to the incident, although Victim and Umfleet had ended their relationship, Umfleet

continued trying to communicate with Victim through calls, texts, and social media. Victim had

told Umfleet to leave her alone and had blocked his known contact information. On the night of

the incident, Victim offered direct testimony that Umfleet first made a “peck,” then a “knock,”

and ultimately a “bang” on her bedroom window. Victim heard Umfleet move back-and-forth

repeatedly between her bedroom window and her front door, which was locked. Victim briefly

opened the front door and saw Umfleet standing and continuing to bang on her bedroom

window. Neighbor’s wife testified she saw Umfleet standing with his hands up on each side of

Victim’s bedroom window “like he was trying to find a way to get in.”

 Given the prior history of unwanted contact, Umfleet’s late-night appearance at Victim’s

home during which he repeatedly knocked and banged on her window and the door, and

 10
Neighbor’s wife’s testimony that it looked to her as if Umfleet was trying to enter through the

window, a jury could reasonably infer that Umfleet took a substantial step towards unlawfully

entering Victim’s home. See Section 562.012.1; Lee, 332 S.W.3d at 270 (finding sufficient

evidence supported the first element of attempted first-degree burglary where the defendant

pounded and kicked on the door and pulled on the doorknob in an effort to gain entry); Berryhill,

673 S.W.2d at 445 (finding sufficient evidence supported the first element of attempted first-

degree burglary where the defendants walked along the victim’s street, circled the home, climbed

a fence into the backyard, opened a screen door and tried to open the door, and peered into a

bedroom window).

 Thus, the State met its burden to adduce sufficient evidence from which the jury could

reasonably find Umfleet committed the first element of attempted first-degree burglary. See

Nash, 339 S.W.3d at 509. Point One is denied.

 B. Point Two—Insufficient Evidence of Specific Object Intent of Burglary

 Point Two raises a more challenging issue. In this point, Umfleet contends the State

failed to adduce sufficient evidence of the second element of attempted first-degree burglary in

that the State did not prove Umfleet intended to commit an offense inside Victim’s home. See

Section 569.160.1; Smith, 522 S.W.3d at 227.

 We note from the record that the State never identified nor sought to prove any specific

object offense for attempted first-degree burglary, namely, what offense Umfleet was attempting

to commit once he gained access to the inside of Victim’s home. The State acknowledges that

stealing, the most common intended object offense of burglary, was not necessarily a reasonable

inference given the particular facts of this case. The State suggests on appeal that Umfleet’s

intended offense may have been stalking. However, we will only sustain a conviction on an

 11
attempted offense with which a defendant is properly charged and proved beyond a reasonable

doubt to have taken a substantial step towards committing. See Nash, 339 S.W.3d at 509. Here,

neither the charging document nor the State’s argument at trial articulated what offense, if any,

Umfleet intended to commit if he gained unlawful entry to Victim’s home. The State counters

that the plain language of the first-degree burglary statute does not require the State to specify

the object offense that the defendant intended to commit when attempting unlawful entry.

 Critically, the State offers no precedential authority in which sufficient evidence was

found to support a conviction on attempted burglary where no specific object offense was

identified in the record. To the contrary, the overwhelming principle developed within the

existing case law requires the State to identify the specific object offense of the attempted

burglary and, through circumstantial evidence, prove the defendant’s intent to commit it therein.

Both parties recognize the applicability of State v. Nolan, 872 S.W.2d 99 (Mo. banc 1994). At

its broadest, Nolan held that where the object offense of the attempted offense requires the

purpose to commit another intended offense, as with attempted burglary, that intended offense

must be specified. Id. at 102–03. Here, the object offense of attempt was first-degree burglary,

but the intended offense was not specified by the State. See id.

 We recognize that Nolan involved instructional error rather than sufficiency-of-the-

evidence claims, and note that Umfleet raises the corresponding instructional error as a matter of

plain error in Point Three of his appeal. Nolan found the State violated the MAI-CR 3d Notes on

Use for attempt where the jury instruction failed to specify the object offense of attempted

second-degree burglary. Id. Here, the State in Point Three concedes the same error was made in

the jury instruction for attempted first-degree burglary in Umfleet’s case. The Western District

recently revisited the importance of supplying the specific object offense in jury instructions for

 12
an attempted offense. State v. Henderson, 551 S.W.3d 593, 603, 605–06 (Mo. App. W.D. 2018)

(finding the trial court plainly erred in giving a verdict directing instruction for felony murder

that failed to satisfy the requirement in MAI-CR 3d 304.06’s Note on Use for attempt by

omitting several elements of the object offense of attempted possession of a controlled substance,

including definitions for possession and substantial step as well as the basis for accessorial

liability). While both Nolan and Henderson focused on the instructional error of failing to

specify the object offense, we find their reasoning relevant and uncontradicted in the sufficiency-

of-the-evidence jurisprudence.7

 Specifically, in other attempted burglary cases, Missouri courts have found sufficient

evidence supported the intent to commit the specific object offense of stealing and assault,

among other offenses. For example, we have found sufficient evidence of the intent to steal

given evidence that the building into which the defendant was attempting to enter contained

items of value, provided there is also additional indicia of guilt. Nolan, 872 S.W.2d at 103; but

see J.N.C.B. v. Juvenile Officer, 403 S.W.3d 120, 126–28 (Mo. App. W.D. 2013) (clarifying that

unlawful entry into a building containing items of value cannot on its own, absent other indicia

of guilt, satisfy the element of intent to commit an offense therein for burglary). We have found

sufficient evidence of the intent to commit assault given evidence that the defendant repeatedly

threatened to physically harm the victim when attempting to enter the victim’s home. Lee, 332

S.W.3d at 270–71. But we have found insufficient evidence of the intent to commit the offense

of failing to appear at court where the defendant was attempting to unlawfully enter a building

other than the courthouse. State v. Ray, 615 S.W.3d 439, 442–43 (Mo. App. S.D. 2021)

7
 While Nolan and Henderson discussed earlier versions of the MAI-CR Notes on Use for the attempt pattern
instruction, the applicable MAI-CR 4th 404.06 attempt instruction and corresponding Notes on Use reiterate and
directly cite to Nolan, stating, “When the object offense requires the purpose to commit another offense, as with
attempted burglary, the other offense must be specified.” MAI-CR 4th 404.06 Notes On Use.

 13
(affirming the trial court’s grant of judgment notwithstanding the verdict to the defendant and

conviction on the lesser-included offense of first-degree trespass because insufficient evidence

supported finding the defendant committed attempted first-degree burglary in that the only object

offense the State sought to prove was “failure to appear” in court, which could not be found to be

an offense completed “therein”).

 We note that the State did not attempt to argue that Umfleet intended to steal from

Victim, assault Victim, commit a sexual offense against Victim, or commit any act of domestic

violence against Victim. Rather, the State presented no theory as to the offense to be committed

therein, either in the charging document or at trial. While the State adduced evidence of

Umfleet’s prior stalking of Victim, it did not allege in its Amended Information or argue during

trial that Umfleet attempted to burglarize Victim’s home for the purpose of stalking her. The

State now suggests on appeal that the jury could infer from the surrounding facts of Umfleet and

Victim’s prior relationship of harassment and stalking that Umfleet intended to commit an

offense against Victim. But the State simply alleged no specific offensive conduct to which to

connect that evidence. For instance, the State mentions Victim was in bed the night of the

incident, yet the State does not allege Umfleet intended to commit a sex offense against Victim.

The State discusses Umfleet’s escalation of his stalking-related conduct towards Victim and his

letter the next day claiming he would not have hurt her, yet the State does not allege Umfleet

intended to assault or commit any domestic violence against Victim. The charged offense of

attempted first-degree burglary required the State to prove that Umfleet took a substantial step

towards breaking into Victim’s home “for the purpose of committing an offense therein.” See

Section 569.160; Smith, 522 S.W.3d at 227. Had the State pursued a specific object offense,

such as stalking, and argued its theory at trial, we then could assess on appeal whether the

 14
evidence sufficiently supported that element; instead, the State wants this Court to not only

supply the offense, but also find the circumstantial evidence in the record to support it. We are

obligated to grant all reasonable inferences from the evidence in favor of conviction for the

charged offense. See Holmes, 399 S.W.3d at 812 (internal citation omitted). But where the

charged offense requires proof of a specific object offense, we cannot become the State’s

advocate and supply that specific object offense for the State. The burden is squarely and

exclusively on the State to charge the defendant with a particular offense and, in the context of

attempt, taking a substantial step towards its commission. See State v. Miller 372 S.W.3d 455,

467 (Mo. banc 2012) (noting as a matter of due process that “[t]he State is required to prove the

elements of the offense it charged, not the one it might have charged” (internal citations

omitted)). We cannot draw inferences from the evidence presented at trial to a hypothetical,

unspecified object offense. To do so transcends our role as a reviewing court and would place us

in a prosecutorial role. By failing to specify the particular offense Umfleet intended to commit

had he gained entry into Victim’s home, the State failed to prove that the facts demonstrated

Umfleet took a substantial step towards committing first-degree burglary. See Nolan, 872

S.W.2d at 102–03; J.N.C.B., 403 S.W.3d at 128–29.

 The State incorrectly posits that requiring the State to allege and prove intent to commit a

particular offense would be adding statutory language to the first-degree burglary statute. While

the statute’s language referring to “an offense” permits the State to allege any offense as the

specific object offense of the burglary, just as felony murder may be alleged on the basis of any

felony, we are persuaded that the State nevertheless must allege a specific offense. See

Henderson, 551 S.W.3d at 605. J.N.C.B. rejected the State’s argument that it is not required to

prove the defendant’s intent to commit the specific object offense of first-degree burglary, in that

 15
case stealing, because it “ignores that ‘[t]he intent to commit a crime [therein] is an essential

element of burglary.’ ‘It is this element of criminal intent that separates burglary in the second

degree from its lesser-included offense of trespass in the first degree.’ The State must establish

intent beyond a reasonable doubt.” J.N.C.B., 403 S.W.3d at 129 (first alteration in original)

(quoting State v. Gibbs, 306 S.W.3d 178, 181 (Mo. App. E.D. 2010)). The State complains that

the mind of a defendant cannot be known, and thus the State could not identify the intended

offense of the attempted first-degree burglary. While we are sympathetic to the burden placed on

the State, lack of direct evidence of a defendant’s mental state is common for an attempted

offense, hence permitting circumstantial evidence and reasonable inferences. See Lee, 332

S.W.3d at 270. Here, the State made no attempt to either identify, suggest, or argue Umfleet’s

intent to commit a specific offense through circumstantial evidence. Essentially, the State is

conceding it cannot prove Umfleet’s intent to commit a particular offense necessary to support a

conviction for attempted first-degree burglary.

 Where there is ambiguity in the defendant’s purpose for entering (or attempting to enter)

the premises of another, the State has proven only the lesser-included offense of attempted first-

degree trespass rather than attempted first-degree burglary. See State v. Haslar, 887 S.W.2d 610,

615 (Mo. App. W.D. 1994) (internal citation omitted). Perhaps recognizing its impediments to

prevailing on this point, the State alternatively submits on appeal that this Court enter judgment

on the lesser-included offense of first-degree trespass, which does not require proving the

element of intent. See id. The only distinct element between first-degree burglary and first-

degree trespass is the intent to commit an offense therein.8 State v. Smith, 522 S.W.3d 221, 225

8
 “A person commits the offense of trespass in the first degree if he or she knowingly enters unlawfully or
knowingly remains unlawfully in a building or inhabitable structure or upon real property.” Section 569.140.1
(2016).

 16
n.5 (Mo. banc 2017) (noting first-degree trespass is a lesser included offense of first- and second-

degree burglary, as the commission of first-degree trespass requires only the first element of both

first- and second-degree burglary); Ray, 615 S.W.3d at 441–42; J.N.C.B., 403 S.W.3d at 129;

Haslar, 887 S.W.2d at 615. Thus, because the distinct element of intent for attempted burglary is

the only element we find the State failed to prove, we may enter judgment convicting Umfleet on

the lesser-included offense of trespass in the first-degree. See Smith, 522 S.W.3d at 225–26.

 Accordingly, Point Two is granted. We reverse the judgment of conviction on attempted

burglary in the first degree and enter judgment convicting Umfleet on the lesser-included offense

of trespass in the first degree and remand to the trial court for resentencing in accordance with

this opinion. See State v. Ahart, 609 S.W.3d 512, 518 (Mo. App. E.D. 2020) (“Where a

conviction of a greater offense has been overturned for insufficiency of the evidence, the

reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the

jury to find each of the elements and the jury was required to find those elements to enter the ill-

fated conviction on the greater offense.” (quoting State v. O’Brien, 857 S.W.2d 212, 220 (Mo.

banc 1993)).

 Because Point Three’s claim of instructional error is premised on the same issue of the

State’s failure to specify the intended object offense of attempted first-degree burglary, Point

Two is dispositive of Point Three. Therefore, Point Three is moot and need not be reviewed.

II. Plain-Error Review of the State’s Cross-Examination of Defendant

 Points Four and Five allege the trial court plainly erred in failing to sua sponte intervene

during the State’s cross-examination of Umfleet concerning Umfleet’s prior convictions and

Victim’s truthfulness. The State suggests Umfleet’s points do not warrant our discretionary

 17
plain-error review. As noted above, “[u]nless manifest injustice or a miscarriage of justice is

shown, an appellate court should decline to review for plain error under Rule 30.20.”

Brandolese, 601 S.W.3d at 626 (internal quotation omitted). Regardless of our level of review of

Points Four and Five, we find Umfleet has not demonstrated the alleged errors resulted in

manifest injustice so as to prevail on appeal. See Tramble, 383 S.W.3d at 40.

 A. Point Four—Prior-Convictions Evidence

 Point Four argues the trial court plainly erred in permitting the State to question Umfleet

about the details of his prior convictions because the State’s questions prejudiced Umfleet by

offering improper propensity evidence that his prior bad acts made him more likely to have

committed the charged offenses.

 The State has an “absolute right” to impeach a defendant by cross-examining him about

the nature, date, and place of his prior convictions and their resulting sentences. Tramble, 383

S.W.3d at 40 (internal citation omitted). While generally the State must refrain from inquiring

into the details of the prior convictions, the State is permitted to challenge the defendant’s

statements and go into greater detail where the defendant fails to fully and accurately disclose his

prior convictions, makes ambiguous statements, denies his guilt, or makes statements designed to

blunt the impact of the prior convictions. See Tabor v. State, 356 S.W.3d 347, 354 (Mo. App.

S.D. 2011) (internal citations omitted); State v. Lloyd, 205 S.W.3d 893, 907–08 (Mo. App. S.D.

2006) (internal citations omitted); see also State v. Watkins, 527 S.W.3d 204, 213 (Mo.App.

E.D. 2017) (clarifying that Aye reversed where there was no justification for the State to go into

detailed questioning about the defendant’s prior convictions (citing State v. Aye, 927 S.W.2 951,

955 (Mo. App. E.D. 1996))).

 18
 Here, the State asked Umfleet about his prior convictions of fraudulently obtaining a

controlled substance, noting that Umfleet pled guilty to felonies that involved fraud and deceit to

get drugs. The State’s questions went to the nature of the offenses and permissibly challenged

Umfleet’s ambiguous statements on direct examination as to the number of prior convictions and

how the prior offenses were merely “some possessions” and not for stalking or domestic-

violence offenses. See Tabor, 356 S.W.3d at 354; Lloyd, 205 S.W.3d at 907–08. Given

Umfleet’s inaccurate disclosure of his criminal history during direct examination, his attempts to

blunt the impact of his prior fraud-based offense by describing them as “possession issues”

arising out of an addiction to pain pills and emphasizing that they did not involve stalking or

domestic violence, and his denial of one conviction on his record, the trial court did not plainly

err in not sua sponte intervening to interrupt the State’s cross-examination. See Tabor, 356

S.W.3d at 354; Lloyd, 205 S.W.3d at 907–08. Only in “the most unusual and exceptional

circumstances” do we ascribe error to the trial court in declining to take action sua sponte during

cross-examination despite no objection by the defendant. Tramble, 383 S.W.3d at 40 (internal

quotation omitted). “Thus, we will rarely find plain error where a trial court has failed to take

sua sponte action with regard to the proceedings.” Id. (internal quotation omitted).

 For Umfleet to carry his burden of establishing plain error, he must show that the State’s

questioning had a decisive effect on the jury’s verdict. Lloyd, 205 S.W.3d at 907 (internal

citation omitted). Here, Umfleet offers a mere conclusory statement that the questioning

prejudiced him and caused a manifest injustice. See State v. Tripp, 168 S.W.3d 667, 679 (Mo.

App. W.D. 2005) (denying plain-error relief where appellant alleged “only a conclusory

statement that the admission of the testimony ‘caused a manifest injustice’”). Therefore, we find

no manifest injustice or miscarriage of justice resulted from the trial court’s inaction during

 19
cross-examination because, in light of the evidence presented, the jury may reasonably have

determined that Umfleet was guilty of the charged offenses regardless of the challenged

testimony. See Tramble, 383 S.W.3d at 41.

 B. Point Five—Commenting on a Witness’s Truthfulness

 Point Five contends the trial court plainly erred in failing to sua sponte intervene when

the State repeatedly asked Umfleet whether Victim was lying because it is improper to ask one

witness to opine on the truthfulness of another witness.

 “It is well established that witnesses should not be asked to comment on the veracity of

another witness’s testimony.” State v. Walters, 241 S.W.3d 435, 439 (Mo. App. W.D. 2007)

(citing State v. Roper, 136 S.W.3d 891, 900 (Mo. App. W.D. 2004)). “[T]o ask a witness for an

opinion as to whether another witness is lying is to invite an opinion as to someone else’s state of

mind that the witness is not qualified to give.” Id.

 Here, the State asked Umfleet whether he was testifying that he didn’t believe a word

Victim said and whether her statements were lies while his statements were truths. Even if

Umfleet had properly objected to such inquiry, we discern no manifest injustice prejudicing the

outcome of Umfleet’s trial from the trial court’s non-intervention. See id.; Tramble, 383 S.W.3d

at 41. Any potential prejudice was initially lessened by Umfleet’s denial in response in which he

avoided answering the question. See Walters, 241 S.W.3d at 439 (noting a lack of prejudice is

shown where the defendant avoids answering the problematic question directly). Additionally,

ample evidence other than Victim’s statements supported Victim’s claims, such as the exhibits of

texts, letters, and social media posts. Moreover, the jury was properly instructed in its duty to

evaluate the credibility of the witnesses. Given the fact that the testimonies of Umfleet and

Victim were already at odds, Umfleet fails to show how this instance of questioning impaired the

 20
jury’s decision. See Ballard v. State, 408 S.W.3d. 327, 333 (Mo. App. E.D. 2013) (internal

citation omitted).

 The record does not suggest the presence of any “unusual circumstances” supporting

Umfleet’s claim that the trial court plainly erred in declining to sua sponte interrupt cross-

examination. In addition, Umfleet has failed to demonstrate the presence of the manifest

injustice necessary to sustain a claim for plain error. See Tramble, 383 S.W.3d at 40 (internal

citation omitted). Point Five is denied.

 Conclusion

 The judgment of the trial court is affirmed in part and reversed and remanded in part. We

reverse the judgment of conviction on attempted burglary in the first degree and enter judgment

of conviction on the lesser-included offense of trespass in the first degree. We affirm the

judgment in other respects. We remand to the trial court for sentencing consistent with this

opinion.

 _______________________________
 KURT S. ODENWALD, Judge

Angela T. Quigless, P.J., concurs.
James M. Dowd, J., concurs.

 21