

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
v. ) No. SD37339
)
LONNIE STULL TILTON, JR., ) **Filed:  February 16, 2023**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable Dean G. Dankelson

**<u>AFFIRMED</u>**

Lonnie Stull Tilton, Jr. ("Defendant") appeals his convictions, after a jury trial, of first-degree burglary and failure to register as a sexual offender.[1]  In two points on appeal, Defendant claims the State's evidence was insufficient to prove that:  (1) he had a "specific intent to steal the items he took" when he entered Victim's garage; and (2) he was still required to register as a sexual offender at the time the State charged him with failing to do so.  Finding no merit in either claim, we affirm.

---

[1] *See* section 569.160 and section 589.425.  Unless otherwise indicated, all statutory references are to RSMo Supp. 2017.

1

**Standard of Review**

> An appellate court's role in reviewing the sufficiency of the evidence to support a criminal conviction is limited to determining whether there was sufficient evidence from which a reasonable fact-finder could have found each element of the offense to have been established beyond a reasonable doubt. *State v. Nash*, 339 S.W.3d 500, 508-09 (Mo. banc 2011); *State v. Bateman*, 318 S.W.3d 681, 686-87 (Mo. banc 2010); *State v. Williams*, 469 S.W.3d 6, 8 (Mo. App. 2015). In reviewing the sufficiency of the evidence, all evidence favorable to the State is accepted as true, including all favorable inferences drawn from the evidence. *Bateman*, 318 S.W.3d at 687. All evidence and inferences to the contrary are disregarded. *Id*. An appellate court "will not weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *State v. Freeman*, 269 S.W.3d 422, 425 (Mo. banc 2008) (internal quotations omitted).

**State v. Ingalsbe**, 557 S.W.3d 515, 519 (Mo. App. S.D. 2018).

**The Relevant Evidence**

Defendant was charged with first-degree burglary for entering a building (Victim's attached garage) "for the purpose of committing stealing therein, and while in such building, there was present in such building, [Victim], a person who was not a participant in the crime." Defendant's actions were captured by Victim's surveillance cameras, and the footage ("the surveillance footage") was played for the jury at trial. Victim's garage was attached to her home, and the surveillance footage showed that after subtly scanning the area to see if anyone was looking, Defendant entered the garage from the sidewalk, grabbed a pair of pants, threw them over his shoulder, then walked back out of the garage, taking the pants with him. Victim and her son were inside the home when Defendant was inside the garage.

The State produced evidence that Defendant had a prior conviction for sexual abuse in the second degree, an offense that required him to register as a sex offender.

Defendant told the police that before he entered Victim's garage, he had been staying for "approximately a week or so" with his girlfriend at the Economy Inn after he had been released from an unrelated incarceration. Defendant did not update his residential address on the sex offender registry to show that he was residing at the Economy Inn.

**Analysis**

*Point 1 – First-Degree Burglary*

Defendant's first point claims the circuit court erred in overruling his motion for judgment of acquittal and entering judgment and sentence against him for first-degree burglary because there was "insufficient evidence of his specific intent to steal the items he took from [Victim]'s garage when he entered it[.]" We disagree.

> A person commits the offense of burglary in the first degree if he or she knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing an offense therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, the person or another participant in the offense:
>
> There is present in the structure another person who is not a participant in the crime.

Section 569.160.1(3).

While Defendant's point claims the evidence adduced at trial was insufficient to prove "his specific intent to steal *the items he took* . . . when he entered [the garage]," (emphasis added), the plain language of section 569.160.1 requires no such proof. Even if we construe Defendant's point broadly to challenge the sufficiency of the evidence to prove that he knowingly entered the garage "for the purpose of committing *an offense* therein," (emphasis added), "direct evidence of a particular mental state is seldom available, [and] proof of the defendant's mental state usually rests on circumstantial

3

evidence and permissible inferences." **State v. Umfleet**, 621 S.W.3d 15, 23 (Mo. App. E.D. 2021) (quoting **State v. Lee**, 332 S.W.3d 267, 270 (Mo. App. E.D. 2011)).

"The State may establish the mental element of a[n] [offense] by evidence of, and inferences from, the defendant's conduct before the act, the act itself, and conduct after the act." **Id**. Here, the State charged that Defendant entered the garage "for the purpose of committing *stealing* therein[.]" (Emphasis added.) The State was not required to prove that Defendant went into the garage with the specific intent to steal pants, and the unlawful entry into a building containing items of value is sufficient to allow a reasonable fact-finder to infer an intent to steal, provided there are additional indicia of guilt. **Umfleet**, 621 S.W.3d at 25.

Victim's open garage contained items of value, and the surveillance footage showed Defendant scanning the area to see if anyone was watching him before he left the sidewalk and entered the garage. The footage next shows Defendant exiting the garage with Victim's pants, looking back in the direction from which he had come on the sidewalk, then looking back at the garage as he resumed walking on the sidewalk in the same direction that he had previously been traveling. Victim had never seen Defendant before, and he had not been invited to enter the garage. Defendant testified in his own defense, and he admitted to the jury that he entered the garage and took the pants. Although Defendant testified that his intent when he entered the garage was to get help because he thought he was going to have a heat stroke, the jury was not required to believe that part of his testimony. *See* **State v. Pierce**, 433 S.W.3d 424, 433 (Mo. banc 2014) (a jury may believe or disbelieve all or any part of the evidence before it).

4

The evidence favorable to the verdict was sufficient to allow a reasonable fact-finder to find each element of the offense of first-degree burglary had been established beyond a reasonable doubt.  Point 1 is denied.

*Point 2 – Failure to Register as a Sex Offender*

Defendant's second point claims the circuit court erred in overruling his motion for judgment of acquittal and convicting him of failing to register as a sex offender because

> the State failed to provide sufficient evidence that [Defendant] was still required by [s]ection 589.400 of [MO-SORA] to register as a sex offender at the time of the alleged offense in September of 2020 for the offense of sexual abuse in the second degree committed in December of 1994.

We disagree.

The State charged Defendant with failing to register as a sexual offender as follows:

> [O]n or about September 28, 2020, [Defendant] resided in the County of Jasper, State of Missouri, and, being required to register as a sex offender under [s]ection 589.400.1(1), RSMo, knowingly failed to register as a sex offender with . . . the chief law enforcement official of the County of Jasper, within three days of [D]efendant's leaving his registered address. [Defendant] was required to register as a sex offender because, prior to that date, [D]efendant had been found guilty of a misdemeanor under Chapter 566 and the victim of such offense was under the age of eighteen years[.]

The elements of failing to register a change of residence as a sexual offender are: "(1) Defendant was required to register under [s]ections 589.400 to 589.425; (2) Defendant changed his residence; (3) Defendant did not inform [the chief law enforcement official] of the change within three days of the change; and (4) Defendant acted knowingly." **State v. Jacobs**, 421 S.W.3d 507, 513 (Mo. App. S.D. 2013) (en banc)). "The 'knowingly' *mens rea* applies both to the individual's change of residence

5

and failure to notify the proper authorities of the change." ***State v. Moore***, 508 S.W.3d 148, 150 (Mo. App. S.D. 2016) (citing ***State v. Younger***, 386 S.W.3d 848, 858 (Mo. App. W.D. 2012)), and section 562.031.1).

Here, Defendant's specific contention is that "the State failed to meet its burden of proving that [Defendant] had been convicted of an offense that required him to register as a sex offender at the time he was charged[,]" claiming that, under the 2018 amendments to MO-SORA, he was relieved of his obligation to register because, as a tier-I offender,[2] the "requirement to register as a sex offender automatically ends at fifteen years unless they petition for early removal[.]" As Defendant's qualifying sexual offense occurred in 1994, Defendant claims that his alleged failure to register occurred well after 15 years later, and he was therefore not required to register any change of address with the Jasper County Sheriff.

The State claims that Defendant was still subject to lifetime registration requirements under the "catch-all" provision of section 589.400.1(7), which states that "[a]ny person [is required to register] . . . who since July 1, 1979, [has] been or is hereafter adjudicated . . . or has been or is required to register under tribal, federal, or military law." The State is correct.

Missouri maintains its own sex-offender registry pursuant to MO-SORA. While the federal government does not maintain its own registry, the federal Sex Offender Registration and Notification Act ("SORNA")[3] set requirements for the registration of

---

[2] The State and Defendant disagree as to whether Defendant was a tier-I or tier-II offender. We need not decide the issue here as its resolution does not affect our disposition of the case.
[3] 34 U.S.C. § 20901 *et seq.* (2017).

6

sex offenders that each state must comply with in order to receive federal funding. *Selig v. Russell*, 604 S.W.3d 817, 821 (Mo. App. W.D. 2020).

While MO-SORA used to contain lifetime registration requirements for all offenders required to register, 2018 amendments to that statutory scheme created a three-tiered system similar to that used in SORNA, whereby only tier-III offenders are required to register for life. *Smith v. St. Louis Cnty. Police*, No. ED 109734, 2022 WL 2032238, at *4 (Mo. App. E.D. June 7, 2022). However, while many aspects of MO-SORA were altered by the 2018 amendments, those amendments left unchanged section 589.400.1(7), which requires a Missouri resident to register as a sex offender if he or she "has been or is required to register under . . . federal . . . law[.]" *Selig*, 604 S.W.3d at 824.

Our supreme court has interpreted this provision to require lifetime registration "if an offender 'has been' subject to federal registration requirements under SORNA." *Smith v. St. Louis Cnty. Police*, and *Ford v. Belmar*, Nos. SC99715 and SC99714, 2023 WL 1392052, at *5 (Mo. banc Jan. 31, 2023).

Defendant concedes that he had a qualifying offense that required him to register under SORNA, the aforementioned "catch-all" provision in section 589.400.1(7) required Defendant to register his change of address, and sufficient evidence supported the jury's finding that he did not do so.

Point 2 is also denied, and the judgment of the circuit court is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS